### SARAH D. GOOCH *vs.* ASSOCIATION FOR RELIEF OF AGED INDIGENT FEMALES.

A corporation established for the support of poor and old women, which devotes all its funds to the support of such women in its Home, and is no source of profit to its members, is a charitable corporation, although it requires a payment of money as a requisite for admitting a woman into its Home.

The rules of a charitable corporation for the support of old women provided that the matron of its Home should admonish the inmates for any violations of the rules; that if the violation continued, the managers should reprove the inmate guilty thereof; that if this was ineffectual, the managers might take such action thereon as the circumstances might require; that the managers reserved the right of dismissing any disobedient or troublesome inmate, but that no vote of removal should be passed by the managers unless the intention to propose such vote was inserted in the notices calling the meeting. *Held*, that a woman who had been admitted as an inmate to the Home, subject to these rules, could not maintain an action against the corporation to recover damages for her removal by the managers from the Home and from a room which had been orally assigned to her therein, although a payment of money had been required from her on admission; although she had

never been admonished by the matron or reproved by the managers; although she had no notice of the intention to remove her, and no opportunity to be heard thereon; and although the managers were actuated by malice in removing her; and that the insertion of the intention to propose her removal in the notices calling the meeting at which she was removed (even if the failure to insert it could aid her in this action) would be presumed in the absence of evidence to the contrary.

TORT, with a count in contract. The first count alleged that the plaintiff, a widow, in 1863, being over sixty years of age and unable to support herself, applied to the defendants, as required by their rules and regulations, for admission to their Home for Aged Indigent Females, was received as a permanent inmate therein, and was entitled to the rights and privileges thereto appertaining, upon the condition and consideration that she should pay the defendants the sum of $240, being all the money she then had, and make over to them such property as might afterwards come to her, if she remained in the Home; that she did pay this sum to the defendants; that the defendants gave and assigned to her a room in their Home, and put her in full possession in November 1863 ; but that in October 1868 they wrongfully expelled her from said room and Home, with her clothing and furniture, and have since refused to furnish further board and necessaries for her.

The second count alleged that the plaintiff paid the defendants the sum of $240, and delivered to them certain furniture; that in consideration thereof they received her as a permanent inmate of their Home, and she became entitled to remain there, and be boarded, clothed, nursed, lodged and cared for in all respects as her necessities should require, so long as she should live ; that she became an inmate in November 1863, and remained until October 1868, when she was wrongfully and forcibly expelled as set forth in the first count.

The third count alleged that, in consideration of the payment of said sum, being all the property she then possessed, and of her promise to make over to them any property to which she might hereafter become entitled, the defendants agreed to receive her into their Home as a permanent inmate, and to board, lodge, clothe, tend, nurse and care for her, in all respects as her necessities should require, so long as she should live, and to give her

a room as her sole lodging room in said Home; and that they have broken their agreement.

The answer denied the contract declared on, and alleged that the defendants were a charitable corporation; that they received the plaintiff as an inmate of their Home upon no contract on their part, but subject to the rules and regulations of their board of managers: and that they removed her because she disobeyed those rules, was disorderly and troublesome and grossly misbehaved herself, and because her conduct was subversive of the good order and discipline of the Home and of the comfort of the inmates.

At the trial in this court, before *Colt*, J., the plaintiff proposed to offer evidence tending to show that the defendants have a corporate fund, and apply all their funds whencesoever received for the support and relief of aged and indigent women, in the mode in which relief was offered to the plaintiff; that their purpose, object and business always has been to furnish permanent homes in their building in Boston called the Home, or elsewhere, for aged and indigent women; that a money or other valuable consideration has always been required by them to be paid as a condition precedent to the acceptance and admission of any person to the Home, and to their undertaking to furnish rooms, home and support to any such person; that the plaintiff applied to the defendants to be received and admitted as a permanent inmate of the Home under their by-laws and the regulations of their board of managers, there to live and be supported by them during the remainder of her life; that she was accepted, received and admitted by them as a permanent inmate of the Home, upon the agreement and consideration that she should pay them the sum of $240, that being all the money and property which she then had; that she then paid them said sum, and on November 3, 1863, entered the Home; that the defendants then and there specially, although not in writing, assigned to her a certain room in the Home, to be taken and kept by her as and for her own and sole room, and gave her the key of the room to be kept by her; that the room and key were taken and kept by her solely until she was removed by the defendants; that the defendants agreed, in consideration

of the sum paid by her to them, to give her the sole use and occupation of said room during her lifetime, and properly clothe, nurse, tend, care for and support her in all respects, so long as she should live ; that on July 28, 1868, she received notice from the defendants' board of managers which inclosed a copy of a vote passed by them dismissing her from the Home, because, " notwithstanding repeated admonitions and warnings," her " conversation and conduct continued to be disrespectful to the matron and managers, and subversive of the good order of the Home and comfort of the inmates," and charging their executive committee with her removal; and which directed her to leave ; that on September 30, 1868, she received a notice from the executive committee directing her to leave next day ; that up to the time when she received these notices she had not received any admonition or reproof as provided by the defendants' rules and regulations, or in any way ; that she had not received any notice or intimation whatever that the defendants had any cause of complaint against her, or that her conduct and conversation were deemed in any way improper or objectionable by the defendants or by any person ; that no charge whatever was made against her, no hearing was allowed her by the board of managers, their executive committee or the defendants, and she was never heard in any way in defence or explanation of any charge or complaint against her ; that no proceeding against her was ever had in conformity with the rules of the defendants or in any way ; that she was always obedient to all of the rules made and adopted by the defendants for the management of the Home, was never troublesome, except as every person of her age may necessarily trouble those who take care of and support them, and never misbehaved herself ; that the board of managers and executive committee acted with malice towards her, did not exercise an honest discretion and judgment or any discretion or judgment whatever, but acted wholly without knowledge, discretion or judgment; that on October 9, 1868, she was removed from the Home by the defendants, acting through their board of managers ; and that the action of the board in removing the plaintiff professed and purported to be taken under the by-laws and rules of the defendants.

The plaintiff also proposed to offer in evidence the printed annual reports of the defendants, together with the by-laws of the defendants and the rules of their board of managers, therein printed. The by-laws provided that persons should be admitted into the Home on such terms and conditions as the board of managers or their authorized committee should think proper; and that the board of managers should have the entire government and control of the Home, might choose committees to perform the duties required of them, should have power to make all such rules and regulations for the admission of inmates and the well ordering and conducting of the respective departments of the Home as to them might seem proper and expedient, and should cause the same to be faithfully executed, and should take charge of and watch over the general interests of the defendants.

The " rules for the regulation of the board of managers and the government of the Home " contained the following provisions :

" Each person who shall be admitted shall be received on a probation of three months ; after which time, the board of managers shall, at their discretion, extend the term of probation or act definitively on the case, and, if the individual be not confirmed as a permanent inmate, after the expiration of six months she shall be dismissed, and the admission fee, deducting board at the rate of two dollars per week, shall be returned to her.

" The board of managers may, by vote, admit inmates on such terms as the pecuniary condition of the association, or the circumstances of any particular case, may seem to demand ; but, except when otherwise ordered, the sum of one hundred and fifty dollars will be required in each case before admission. In no case, however, will a proposition to pay this or any other sum be considered, by itself, as conferring a right upon the person making it to send any individual to the institution, either permanently or temporarily ; the society intending to reserve to itself in all cases the exclusive right to admit or reject persons who may desire to become inmates.

" Furniture and other articles brought into the house, by or for permanent inmates, are to remain for the benefit of the associa-

tion. When inmates are pensioners of any benevolent institution or society, it is expected that their pensions will be continued, in order to lessen the expenses incurred by the institution in their support.

" Inmates who have property will be required to secure the same to the association before admission ; and in case of their obtaining property after their admission, it will be necessary to make it over to the association, if they continue to remain in the Home.

" To preserve order and harmony in the family, entire obedience must be paid to all rules and regulations adopted for the government of the institution ; and it will be the duty of the matron kindly to admonish the inmates for any violation of the same. Should there be no amendment in the conduct of any one who has been thus admonished, the matron shall prefer a complaint to the executive committee, whose duty it shall then be to visit and gently reprove the individual ; and if such procedure prove to be ineffectual, said committee shall report the case to the board, who may take such action thereon as the circumstances may seem to require. No vote of removal, however, from the Home shall be passed at any meeting, unless the intention to propose such a vote shall have been inserted in the notices calling the same.

" Should any inmate find herself dissatisfied or unhappy, she is at liberty to leave the institution, taking with her such articles belonging to her as the executive committee may authorize her to take. Should she leave within six months from her admission, the premium which has been paid on her account shall be returned, after deducting a moderate charge for board. But should any inmate prove disobedient or troublesome, the managers reserve the right of dismissing her at any time."

The reports also showed that the whole income of the defendants, amounting to many thousands of dollars annually, was spent in carrying on the Home, and incidental expenses ; that the amounts paid by inmates on their admission amounted to only a few hundred dollars each year ; that the corporation had no capital stock ; that all payments by its members were voluntary ; and that the services of the managers were gratuitous.

The defendants contended that, on the facts which the plaintiff offered to prove, she could not recover ; and the judge, before verdict, reported the question whether, on those facts, the action could be maintained, for the determination of the full court.

*J. F. Pickering,* for the plaintiff, cited *Riddle* v. *Proprietors of Locks & Canals,* 7 Mass. 169, 184 ; *Smith* v. *Lowell Congregational Meeting-house,* 8 Pick. 178 ; *Sanderson* v. *White,* 18 Pick. 328 ; *First Parish in Sudbury* v. *Stearns,* 21 Pick. 148, 151 ; *Hayward* v. *Pilgrim Society,* Ib. 270 ; *South Lowell Meeting-house* v. *Lowell,* 1 Met. 538 ; *Davis* v. *Lowell Meeting-house,* 8 Met. 321 ; *Attorney General* v. *Federal Street Meeting-house,* 3 Gray, 144 ; *Goddard* v. *Smithett,* Ib. 116 ; *Fuller* v. *Salem & Danvers Loan & Fund Association,* 10 Gray, 94 ; *Attorney General* v. *Merrimack Manufacturing Co.* 14 Gray, 586 ; *Hewett* v. *Swift,* 3 Allen, 420 ; *Stewart* v. *Harvard College,* 12 Allen, 58 ; *Trustees of Wesleyan Academy* v. *Wilbraham,* 99 Mass. 599 . *Potter* v. *Smith,* 103 Mass. 68 ; *Attorney General* v. *Salem,* Ib. 138, 140 ; *Carlton* v. *Salem,* Ib. 141 ; *Bank of Columbia* v. *Patterson,* 7 Cranch, 299 ; *Dartmouth College* v. *Woodward,* 4 Wheat. 518, 636, 660 ; *Society for Propagation of the Gospel* v. *New Haven,* 8 Wheat. 464 ; *Moran* v. *County Commissioners,* 2 Black, 722 ; *Allen* v. *McKeen,* 1 Sumner, 276 ; *Smith* v. *Birmingham Gas Co.* 1 Ad. & El. 526 ; *Davis* v. *Waddington,* 7 Man. & Gr. 37 ; *Attorney General* v. *Middleton,* 2 Ves. Sen. 327 ; *Attorney General* v. *Governors of Foundling Hospital,* 2 Ves. Jr. 42 ; *Duncan* v. *Findlater,* 6 Cl. & Fin. 894 ; *Greenwood* v. *Seymour,* 7 H. & N. 355 ; *Ranger* v. *Great Western Railway Co.* 5 H. L. Cas. 72 ; *Mersey Docks Trustees* v. *Gibbs,* Law Rep. 1 H. L. 93, 94, 104, 110 ; *Dunn* v. *St. Andrew's Church,* 14 Johns. 118 ; *Weed* v. *Panama Railroad Co.* 17 N. Y. 362 ; *Bissell* v. *Michigan Southern & Northern Indiana Railroad Co.* 22 N. Y. 258 ; *New York & New Haven Railroad Co.* v. *Schuyler,* 34 N. Y. 30 ; *Akin* v. *Blanchard,* 32 Barb. 527 ; *Belmont* v. *Erie Railway Co.* 52 Barb. 637 ; *People* v. *Clark,* 53 Barb. 171 ; *Frankfort Bank* v. *Johnson,* 24 Maine, 490, 503 ; *Badger* v. *Bank of Cumberland,* 26 Maine, 428 ; *Downing* v. *Mount Washington Road Co.* 40 N. H. 230 ; *Foot* v. *Rutland &*

*Whitehall Railroad Co.* 32 Verm. 633; *Fuller* v. *Plainfield Acad-. emy,* 6 Conn. 532; *Hood* v. *New York & New Haven Railroad Co.* 22 Conn. 502, 509; *Goodspeed* v. *East Haddam Bank,* Ib. 530; *Freeholders of Sussex* v. *Strader,* 3 Harrison, 108; *Commonwealth* v. *St. Patrick's Benevolent Society,* 2 Binn. 441, 448; *White's Bank of Buffalo* v. *Toledo Insurance Co.* 12 Ohio State, 601, 605; *Seagraves* v. *Alton,* 13 Ill. 366; *Ryan* v. *Dunlap,* 17 Ill. 40; *Metropolitan Bank* v. *Godfrey,* 23 Ill. 579, 602; *Blunt* v. *Walker,* 11 Wis. 334; *Whitman Mining Co.* v. *Baker,* 3 Nev. 386.

*J. C. Ropes & J. C. Gray, Jr.,* for the defendants, cited *Feoffees of Heriot's Hospital* v. *Ross,* 12 Cl. & Fin. 507; *S. C.* 5 Bell App. Cas. 37; *Pierson* v. *Thompson,* 1 Edw. Ch. 212; *Dartmouth College* v. *Woodward,* 4 Wheat. 518, 633; *Black & White Smiths' Society* v. *Vandyke,* 2 Whart. 309; *Toram* v. *Howard Beneficial Association,* 4 Barr, 519; *Fuller* v. *Salem & Danvers Loan & Fund Association,* 10 Gray, 94; *Wright* v. *Deeley,* 4 H. & C. 209; *Wood* v. *Leadbitter,* 13 M. & W. 838; *McCrea* v. *Marsh,* 12 Gray, 211; *Burton* v. *Scherpf,* 1 Allen, 133; *Brooks* v. *Brooks,* 11 Cush. 18, 20; Sts. 1849, *c.* 162;* 1858, *c.* 58; 1 Bl. Com. 471; Angell & Ames on Corp. § 39; Lewin on Trusts, 19; Hill on Trustees, 518.

CHAPMAN, C. J. The first count is in tort, alleging that the plaintiff is a widow; that in 1863, being over sixty years of age and unable to support herself, she applied to the defendant cor-

---

\* " AN ACT TO INCORPORATE THE ASSOCIATION FOR THE RELIEF OF AGED INDIGENT FEMALES.

" *Be it enacted, &c.,*

" Moses Grant, Charles F. Barnard, and Lewis E. Caswell, their associates and successors, are hereby made a corporation, by the name of the Association for the Relief of Aged Indigent Females, for the purpose of providing for the support of aged indigent females not otherwise provided for; with all the powers and privileges, and subject to all the duties, liabilities, and restrictions, set forth in the forty-fourth chapter of the Revised Statutes; and, for the purposes aforesaid, may take and hold real estate to an amount not exceeding fifty thousand dollars, and personal property to an amount not exceeding twenty-five thousand dollars.

" Approved April 30, 1840.

poration, as required by their rules and regulations, for admission to the Home for Aged Indigent Females and was received as a permanent inmate and entitled to the rights and privileges thereto appertaining, upon the condition and consideration that she should make a certain payment of money, and transfer to them the property she then possessed; that in November 1863 a certain room in the house was assigned to her and placed in her ful. possession; and that in October 1868 she was wrongfully expelled therefrom with her clothing and furniture by the defendants, and they have since refused to furnish further board and necessaries for her.

The second count alleges that she paid the defendants the sum of $240, and delivered to them certain furniture; that she became a permanent inmate of the house and entitled to remain there and be boarded, clothed, nursed, lodged and cared for in all respects as her necessities should require, so long as she should live, and that she became an inmate in November 1863, and remained till October 1868, when she was forcibly expelled.

The third count is in contract and sets forth more particularly her right by contract to the room, and the breach of that contract.

In all these counts it is obvious that the alleged contract is the foundation of the plaintiff's claim. Without raising any technical objections to the declaration, the defendants deny that they made such contract, and say they are a charitable corporation and received the plaintiff to the Home as an object of their charity and in no other way, and that their refusal to permit her to remain there is for good cause.

The defendants' act of incorporation is dated April 30, 1849, (St. 1849, c. 162.) An additional act, dated March 18, 1858, (St. 1858, c. 58,) merely authorizes the corporation to hold a greater amount of real estate. The act is entitled "An act to incorporate the Association for the Relief of Aged, Indigent Females," and this is all that it contains to indicate its purpose. This indicates a mere charity. Its by-laws are more full. Its funds are derived from voluntary donations, and it has no capital stock, or provision for making dividends or profits. The services

Gooch *v.* Association for Relief of Aged Females.

of the managers are gratuitous. Its special object is to provide a home for aged indigent females, and its funds are to be appropriated to that purpose and incidental expenses. It has erected a house for the purpose, and the board of managers and their appropriate committees are to determine who are fit subjects to receive this charity, what shall be done to aid them, and on what terms and conditions, and how long they may remain.

The general control of the Home and its inmates is intrusted to the board of managers. The plaintiff's counsel suggests that they merely keep a boarding-house. If this be so, it is still true that furnishing board, lodging and nursing to needy persons is among the most familiar and useful of charities, and that which constitutes such an institution a charity is that it does not furnish these things for profit. The small amount of money and property required to be furnished by those who enter as inmates, goes to supplement the charitable fund, and falls far short of being a compensation to the defendants for what the inmate receives. Hospitals and schools generally require some payment of this kind, but are none the less charities on that account.

It is hardly necessary to cite authorities to sustain the point that the institution of the defendants is a charity. The recent case of *Jackson* v. *Phillips*, 14 Allen, 539, discusses the subject fully. See also *Odell* v. *Odell*, 10 Allen, 1.

There is nothing before the court to prove the contract set forth in the declaration. There does not appear to have been either a lease for life or years of any room, or any agreement to furnish board or nursing for any definite period.

The plaintiff, by being admitted as a permanent inmate, became subject to the by-laws and rules of the institution. These rules reserve to the managers the right to dismiss at any time any inmate who should prove disobedient or troublesome. Whether any inmate has proved to be disobedient or troublesome is a question to be finally settled by the managers. No previous hearing of the inmate or notice to her is necessary. The requirement that she shall be first kindly admonished is a rule for the guidance of the matron, and does not restrict the power of the board of managers. The only restriction upon their form of pro-

ceeding is that the intention to pass a vote of removal shall be stated in the notices calling the meeting. Such notice is to be presumed to have been given in the absence of proof to the contrary. There was no offer of proof at the trial or suggestion at the argument that there was any defect in the notice of the meeting at which the vote of dismissal was passed. On the contrary, the removal of the plaintiff is alleged to be the act of the corporation. She therefore shows no legal ground to complain of the proceedings of the corporation or their managers. Moreover as the notice was to the managers and not to her, if it was sufficient for them, it is difficult to see how any defect in it could aid her in this action. *Judgment for the defendants.*