All the Justices concurring.

---

ST. MARY'S COLLEGE v. L. W. CROWL, *as Treasurer, &c.*

EXEMPTION FROM TAXATION; *Educational Purposes.* Property, in order to be exempt from taxation, because used for educational purposes, must be used directly, immediately and exclusively for such purposes.

*Error from Pottawatomie District Court.*

INJUNCTION, brought by *St. Mary's College* against the treasurer of Pottawatomie county to restrain the collection of alleged illegal taxes. The petition alleges that plaintiff is a corporation, "organized for purposes wholly educational in their nature; that during the year 1870 said plaintiff was engaged in the conduct and control of an educational institu-

tion" by the name of *St. Mary's College*, "and the sole and only purpose and design of the plaintiff was the management of the said institution for the purposes of education, and none other," etc.; that the plaintiff owned certain real and personal property, which it "used exclusively for educational purposes," and which was therefore exempt from taxation; that said property had been illegally assessed, etc. From the answer it appears that plaintiff owns 80 acres of land, inclosed by itself as college grounds, on which are erected the college buildings, and that said college grounds, and buildings thereon, being used for educational purposes, have not at any time been assessed or taxed; that the taxes complained of by plaintiff were assessed on an extensive tract of land adjoining said college grounds, of which 320 acres were inclosed and cultivated as a "farm," 120 acres were used as a pasture, and the *residue* "is wild land, uninclosed, unoccupied, and unused for any purpose whatever by any person or corporation," and upon a lot of horses, cattle, mules, asses, hogs, pleasure carriages, hay and grain, and farming implements kept and used on said farm. From the agreed statement of facts on which the case was tried, it appears—

"That from sometime previous to the time of the assessment and levy of the taxes complained of, the plaintiff, by contract with the government of the United States, had been educating about eighty Indians in agricultural pursuits, and in the rudiments of reading, writing, etc., and that the land and personal property were used by the plaintiff as follows: The inclosed part of the land was used as a farm on which vegetables, grain and stock are produced, and on which the Indians were trained and educated to agricultural pursuits, and the unimproved part of said land was used for grazing stock and cutting hay for the farm, and the wood-land for obtaining wood; and the products of the farm were mainly consumed on the farm, but a portion of the products of the farm was sold and the proceeds of the same were used in furnishing clothing and provisions for the Indians, the employees in their training, and the missionaries among them. The horses, mules, etc., were used in working the farm, and the farming implements were used in the same way, and the live stock, consisting of cattle

and hogs, was for use to furnish milk, butter and meat to the Indians and employees.  The land used to obtain hay, pasture and wood, as above stated, was prairie and wood-land, unimproved, uncultivated, and was in part prairie and part wood land, and the balance inclosed and cultivated.  The property, real and personal, on which the taxes were levied as alleged in the petition, was at the time of said levy and at all times herein stated, used for no other purpose by the plaintiff than as herein set forth."

The action was tried at the February Term 1872 of the district court.  The temporary restraining order granted on the filing of the petition was vacated, the injunction prayed for was denied, the petition dismissed, and judgment given in favor of the county treasurer for costs, and the plaintiff brings the case here on error.

*Stillings & Fenlon,* for plaintiff in error:

1. The very name of the plaintiff indicates the purpose of its existence; and it is admitted that it is a corporation for educational purposes.  We are aware that the current of the decisions is to the effect that the person claiming an exemption from the common burden imposed upon all property for the support of government, must bring himself clearly within the scope of the constitutional and statutory provisions granting the exemption.  And we are further aware, to which reflection we desire to call the attention of the court, that the large majority of decisions on this question were rendered before the public mind had been so thoroughly awakened to the importance of fostering the interests of education; before the benefit to society, arising from educational institutions, had so fastened itself upon the public mind as to find expression in the exemptions from taxation, specified in the fundamental laws adopted of late years.  And many of the decisions are based upon claims made by various religious denominations, on the plea of religious exemption, of which the state and the courts have been peculiarly jealous.  In the matter of education of later years, the people, and the conventions which expressed their will, have become more liberal, as they

have deemed that society can well afford, in view of the blessings of education, to forgive the pittance of taxation arising from institutions of learning and the property used therein. We claim that it is but just that the rigid, inexorable rule heretofore adhered to should, at least to some extent, bend to the liberality in these matters, which is the prevailing and intelligent sentiment of the times in which we live.

In the case before us the property, real and personal, sought to be subjected to taxation, was used — the real estate "in training and educating Indians in agricultural pursuits;" the personal property used necessarily in the same training, and the products of the farm were consumed thereon, and in furnishing clothing and provisions for the Indians, employees, and for missionaries; "that the property, real and personal, mentioned in the petition, was used for no other purpose than as set forth;" that is, for no purpose of private or corporate gain, of individual emolument, but solely to the end of subserving the literary and agricultural education of the Indians — a purpose sanctified by the legislation and paternal care of the federal government for many years past, a policy upon its part reflecting honor upon its foresight and humanity. It is too late now to question whether the science of agriculture is education, or forms any part of education. The constitution of our state (art. 6, sec. 2,) and statute of the state, as well as of the federal government, specifically mentions *agriculture* as a branch of education, and both governments have within our own borders munificently endowed agricultural colleges; and when our organic law says that "all property *used exclusively for educational purposes* shall be exempt from taxation," it would be a contradiction of terms to say that property used exclusively in teaching the science of agriculture should be taxed.

The test which seemed to be applied by this court in the *Washburn College* case, (8 Kas., 344,) was, whether the property was *used* for educational purposes; and because the fact was apparent there that the property was not used at all, the court decided that the mere ownership by an educational insti-

tution did not bring the property within the provision of the constitutional exemption; but it seemed to be admitted in that case if the property had been *occupied and used* by the collegiate institution, and if it had therein its necessary scientific property used in colleges, that all such property would be exempt from taxation. This case is totally different from that, for here, all the property, real and personal, is admitted to be *used* for the purposes of education, and *"for no other purpose;"* so that the ruling in the *Washburn College* case can have, we apprehend, no bearing on the case at bar.

The personal property on the farm — the live stock, plows, threshing machines, wagons, harrows, etc., it must be admitted, are as essential in the process of an agricultural education, as chemical, astronomical, or mathematical instruments are in obtaining or imparting a purely scientific education; and if one class of property would be exempt from taxation, we see no reason why the other would not. The quantity, value and usefulness must be left to the discretion of the persons in charge of the institution, and is not a question for the court. If the evidence in the case shows they are exclusively *used* in the process of education, the express terms of the constitution exempts them from taxation. Can it be argued that because the products of the farm are partially consumed in feeding the students, and their instructors, that therefore the property is not *exclusively used* for educational purposes? As well might it be said that a blackboard, a compass, a theodolite, a crucible, or other article used in colleges, is not exclusively used for educational purposes, because with their aid, in part, tuitions are earned which pay the expenses of a professor, and that, therefore, they are not *exclusively used* in the sense of the constitution; or that churches are not used exclusively for religious purposes, because the Sabbath collections are taken up to defray the expenses of maintaining the church. Such constructions would surely do violence to the intention of the framers of our organic law. (*Asylum v. Phœnix Bank*, 4 Conn., 172.) The institution that now claims the benefit of the constitutional exemption from taxation, was in

fact, though not in name, an educational institution long before the white man had crossed the Missouri, and its efforts and labors in the education and civilization of the original owners of our soil have been gratefully appreciated by the general government, which provided by treaty stipulation that it should retain the lands on which it had educated the red men for a quarter of a century before the fundamental law of Kansas was framed. Under that law it has become a body corporate for educational purposes only. Its property, in every fair sense of the term, is *exclusively used* for educational purposes, and though it refers with pride to its history and its antiquity, it asks only that this court shall hold it to be what it ever has been, and shall extend to it the benefits of a constitutional provision framed to foster, protect and cherish it and kindred institutions.

*R. S. Hick*, for defendant in error:

The plaintiff claims exemption from taxation for its property on the alleged ground of its use for educational purposes. The exemption from taxation is of property used *exclusively* for educational purposes, and not partly for educational and partly for other purposes. (Const., art. 11, § 1.) If used for other purposes, it was liable to taxation, although the proceeds were in future to be applied for the promotion of education. *Cincinnati College v. State*, 19 Ohio, 110. All laws exempting any of the property in the state from taxation, being in derogation of equal rights, should be construed strictly: 19 Ohio, 110; 1 Metcalf, 538; 2 Cushing, 611. "Exemptions, as they are contrary to common right, are not to be favored by the courts. They should be confined to the specified objects, and to such as by reasonable intendment the legislature must have had in contemplation. In short, the statute which exempts persons or property from taxation is to be construed strictly." *Orr v. Baker*, 4 Ind., 86. See also 8 Ind., 328.

The property of the plaintiff which was taxed was not used exclusively for educational purposes, but was used for

other purposes; and very little, if any of it, was actually *used* for educational purposes at all, in the sense intended by the constitution.   It was not such property, either in its kind or use, as was intended to be exempted from taxation by the constitution.

To entitle it to exemption, its use for educational purposes must have been *immediate*, as well as exclusive, and not remote — the property must have been such as the college buildings, the furniture and apparatus used in the school-rooms, the ground whereon the buildings are situated, the yards, college grounds proper, in actual and immediate use in carrying on the usual and necessary business of an educational institution; and not such property, put to such uses, as the plaintiff's, described in the agreed statement of facts. Were it otherwise, it would be difficult to tell where the exemption would stop.   Indeed, it is difficult to see how a large portion of the property claimed to be exempt from taxation in this case — for instance, the meadow and pasture lands, the wild, unoccupied, unimproved prairie and wood-lands, threshing machine, horses, mules, cattle, swine, and a pleasure carriage — could very well be used exclusively for *educational* purposes.   The fact that the plaintiff was, under contract with the United States, educating a certain number of Indians to agricultural pursuits, on the farming lands, can make no difference..   Any farmer might have a similar contract, and use his farm for a like purpose; but that would not give his farm immunity from taxation.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought to restrain the collection of certain taxes, claimed to be illegal and void because levied upon property claimed to be used for educational purposes.   The action was tried in the court below on an agreed statement of facts.   This statement shows that the property was used more or less mediately or remotely for educational purposes.   But none of it was used exclusively, directly, and immediately for such purposes.   Under the laws

of this state all property not expressly exempted is subjected to taxation. (Gen. Stat., 1019, ch. 107, § 1.) And no property is exempt because it is used for educational purposes unless it is *exclusively* so used. (Const., art. 11, § 1.) Property used partially for educational purposes, and partially for some other purpose, is not exempt. Even property used mainly for educational purposes, but not exclusively, is not exempt. In the present case we shall not discuss separately the taxability of each article or piece of property claimed to be exempt, but shall discuss more especially the taxability of the inclosed arable and cultivated land; for if any portion of the plaintiff's property is exempt from taxation it is certainly that portion. This property was used for at least three purposes: 1st, It was used for the purpose of teaching certain Indians agriculture. 2d, It was used for the purpose of raising food for a large amount of live stock kept on the farm, and food for said Indians, their tutors, etc. 3d, It was used for the purpose of raising produce to sell. The proceeds of the sales, however, were used to feed and clothe the Indians, to feed and clothe "the employees in their training," and to feed and clothe "the missionaries among them." We suppose it will be conceded that if the property were used exclusively for the purpose of teaching the Indians agriculture it would be exempt. But even this may not be certain, for agriculture was hardly considered a branch of education when our constitution was framed. For the purposes of this case it may also be conceded that if the property were used exclusively for teaching the Indians agriculture, and for raising food for them and the professors, and the necessary stock kept on the farm, it would still be exempt. But when it is used to raise food for stock not necessary to be kept on the farm, and to raise produce to sell, no further concessions in favor of its exemption can be made. Such use goes at least one step beyond where concessions can be made in favor of its exemption. It is solely the *use* of the property which determines whether the property is exempt or not; *Washburn College v. Shawnee County*, 8 Kas., 344. It makes no difference who owns the property, nor

who uses it. Property used exclusively for educational purposes is exempt, whoever may own it, or whoever may use it. Property not used exclusively for educational purposes, (if otherwise taxable,) is not exempt, whoever may own it, or whoever may use it. And this use must be direct and immediate, and not indirect or remote: *Cincinnati College v. State,* 19 Ohio, 110. If a farm be used for the purpose of raising produce to sell and get money to carry on a school, it will not be exempt. The use for educational purposes is in such a case too remote. The immediate or primary object for cultivating the farm in such a case is, to obtain the produce; the secondary object is to obtain the money that the produce will bring; and the remote object is to aid and foster the school. The farm itself, in such a case, is not used in teaching anything or in illustrating or explaining anything, as books, charts, apparatus, etc., are. It is not used as a necessary shelter and protection for the students, their books, apparatus, etc., as a school-house always is. And it is not used as a necessary site for a school-house, as school-house grounds always are. In fact, it answers no direct or immediate educational purpose or necessity. It is no part or portion of the school, and is not used as such. It therefore does not come within the constitutional exemption. But the farm of the plaintiffs is used directly as well as remotely for educational purposes. It is used directly for the purpose of teaching and illustrating agriculture, and it is used remotely for the purpose of aiding and fostering their school. The former use is covered by the constitutional provision, but the latter use is not. The constitution does not exempt a farm used to raise produce to sell to other persons to obtain means whereby to purchase articles of food and clothing to feed and clothe the students, professors, and missionaries connected with a school. And therefore, as the latter use, above mentioned, is not covered by the constitution, the plaintiff's farm cannot be held to be exempt. For all property, in order to be exempt, must be devoted exclusively to the use covered by the constitution. When the people of this state framed their constitution it was probably thought

that to tax property used exclusively for educational purposes would virtually be to tax education itself. Every tax paid on such property must come from the students themselves, or from their friends, as the property itself can in no other way bring in any income. But when property is used for some other purpose, as well as for the purpose of education, then this other purpose is supposed to bring in an income adequate to pay the taxes on the property, and then a tax on said property is not a tax on education, but it is a tax on the other purpose. If it were possible to apportion the taxes so as to make the property pay taxes in proportion to its two uses it would probably be well. For instance, if one-half of the use of a certain piece of property were for educational purposes, and the other half for some other purpose, then such property ought to be subject to just half as much tax as property used exclusively for some other purpose. But it is impossible to make any such apportionment. All property may be used to some extent, mediately or immediately, for educational purposes. But the extent to which it is so used cannot well be measured. Its use for educational purposes, as compared with its other use, may be infinitely greater or infinitely smaller than this other use. The use for educational purposes may be nearly the whole of the use, or it may be only a very small proportion thereof. And whatever it may be, it cannot be accurately defined, measured, or known. Hence we see the wisdom of the constitutional provision requiring that property shall be used exclusively for educational purposes in order to be exempt. For, if property used only partially for educational purposes should be exempt, it would not be long until an exemption would be claimed for nearly all property, as being used in some slight or remote degree for educational purposes, and all rules of equity and equality in taxation would be obliterated and destroyed. It has often been laid down as an equitable rule of taxation, that all property should be taxed in proportion to its value. And this rule seems to be eminently fair. A certain amount of revenue must be raised every year to defray the current expenses of the government. And it seems

to be eminently fair that every kind of property protected by the law should contribute its proportionate share. For if any portion of the property of the state should be exempt from taxation it would necessarily throw an additional burden on the rest of the property. If the rule of taxation contended for by counsel for plaintiffs were adopted, and followed to its legitimate results, it would naturally lead to the most disastrous consequences to this commonwealth. If the employment of Indians on a farm, and teaching them how to cultivate it, would exempt all the cultivated land of such farm from taxation — if it would also exempt all the wild, uncultivated and uninclosed prairie land used for grazing or for cutting hay from taxation — if it would exempt all the wood-land from which wood was taken from taxation — if it would exempt all the horses, neat cattle, and other stock kept on said farm, the pleasure carriages, farming implements, etc., then every farmer in the state might obtain an Indian (or indeed he might obtain any other person,) and commence teaching him agirculture, and thereby exempt all his property from the burdens of taxation. And also, by analogy, every blacksmith, or other mechanic, might obtain an apprentice and teach him his trade, and thereby exempt his shop and tools from a like burden. And also, every householder might teach his own children their alphabet, etc., and thereby relieve his homestead from the burdens of taxation, for his homestead would then of course be used partially for purposes of education.

The judgment of the court below must be affirmed.

All the Justices concurring.