STATE OF MISSOURI, EX REL. ALEXIAN BROTHERS' HOSPITAL, Respondent, *v.* DAVID POWERS, ASSESSOR OF THE CITY OF ST. LOUIS, Appellant.

### April 19, 1881.

A hospital-building is not excluded from the benefits of a statute exempting from taxation property used for "purposes purely charitable" merely

because certain patients pay for what they receive, when the profits derived therefrom are applied exclusively to the charitable purposes of the institution.

APPEAL from the St. Louis Circuit Court.
*Affirmed.*

LEVERETT BELL, for the appellant, cited: *Wyman* v. *St. Louis*, 17 Mo. 335 ; *Vail* v. *Beach*, 10 Kan. 214 ; *St. Mary's College* v. *Crowl*, 10 Kan. 442 ; *Chapel* v. *Boston*, 120 Mass. 212.

A. J. P. GARESCHÉ, for the respondent, cited : *Manchester School*, 2 Ch. App. 497 ; *Gerke* v. *Purcell*, 25 Ohio St. 239 ; *Goodrich* v. *Association*, 109 Mass. 558; *Fellows* v. *Miner*, 119 Mass. 554 ; *McDonald* v. *Hospital*, 120 Mass. 435.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case sets forth that relator is a corporation, and that the defendant is the assessor of the city of St. Louis, whose duty it is to list for taxation of State, city, school, and other purposes, all property in the city ; that relator owns a lot in said city, of four and forty-one one-hundredths acres, on which its buildings are erected ; that the hospital of relator is conducted by a religious community who devote themselves to the gratuitous care of the sick, the members of the community subsisting on the plainest food, and dressing in a plain way, the maintenance of each brother costing about $175 a year ; that the institution receives pay patients, but applies any profit thus made exclusively to the payment of the debt due on their building and grounds ; that their pay patients are all received on cheaper terms than are offered by boarding-houses and hotels, and that their patients are not turned away when they can no longer pay, and that from many who enter as pay patients, little or nothing is collected ; that last year is a fair sample of the preceding years of the existence of the institution ; that during last year it received two hundred and thirty patients, who stayed six

thousand three hundred days, and from whom $4,084, or an average of seventy-three cents a day, was received, for which sum they were furnished with medicines, medical attention, nursing, board, fuel, and lights ; that during the same year, three hundred and nineteen charity patients were received *gratis* and entertained *gratis;* that these patients stayed an average of sixty days each ; that the institution could not maintain itself, but for alms which are constantly solicited by the brethren, and received ; that the indigent poor are its first object ; that it increases the number of its poor patients as its means increase ; that the members of the community own nothing, and have no pecuniary interest in the property of the corporation, which does not, and from its character and objects cannot, declare dividends. Plaintiff asks that an acre of ground, on which the buildings of relator stand, be exempted from taxation, and that defendant be required to show cause why the acre described should not be stricken from the list of taxable property.

Defendant waived the issuing of an alternative writ and filed an answer in which he says that lots in incorporated cities to the extent of one acre are exempt from taxation when used exclusively for purposes purely charitable, and not otherwise ; that the hospital of plaintiff is in part conducted for hire ; that its annual receipt from pay patients is about four thousand dollars, and that it is therefore not entitled to the exemption claimed.

The Circuit Court sustained a motion for judgment on the answer, and a peremptory writ was ordered in accordance with the prayer of the petition.

The question as to what is or is not a legal charity was elaborately argued and is carefully examined in *Jackson* v. *Phillips*, 14 Allen, 539. That charities are not confined in the present day to those permitted by law in England in the reign of Elizabeth, and that, in this country, at present, no distinction is made between charitable gifts for the benefit of different religious denominations, need hardly be said.

In that case a legal charity is defined to be, "a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

That this hospital is a charitable institution, is not, however, denied, and cannot, we think, be doubted. The question before us is, whether, from the pleadings, it appears that the building and lot in question are used for "purposes purely charitable" within the meaning of the Constitution, which provides (Art. X., sect. 6) for the exemption of lots and buildings "used exclusively for public religious worship, for schools, or for purposes purely charitable."

The question is one of very general interest, not only as affecting the public revenue, but also for its bearing upon the many institutions of all religious denominations, and of various bodies and associations not of a distinctly religious character, which will be affected by its decision.

Does the fact that this institution derives some part of its revenue from paying patients exclude it from the benefits of the constitutional exemption from taxation?

We do not see upon what reasonable grounds this can be said. Suppose that the community in charge of the hospital devoted themselves partly to some kind of manual labor, shoemaking for instance, in order to raise money for the purpose of furnishing medicine and necessaries and comforts to their patients, would not this be a charitable act? If they devote themselves partly to the care of paying patients, to defray the expenses of attendance upon the poorer patients who cannot pay, this is surely an act of charity. Must we hold that if the community raise money by begging, their purposes are purely charitable; but if they work to support themselves whilst ministering to the sick, and to

support the sick to whom they minister, the character of the charity is impaired? Or is it to be contended that no charitable institution, not endowed, and independent, is to be exempted from taxation under the law? The fact that paying patients are taken, the profits derived from attendance upon these patients being exclusively devoted to the maintenance of the charity, seems rather to enhance the usefulness of the institution to the poor; for it is a matter of common observation amongst those who have gone about at all amongst the suffering classes, that the deserving poor can with difficulty be persuaded to enter an asylum of any kind confined to the reception of objects of charity; and that their honest pride is much less wounded by being placed in an institution in which paying patients are also received. The fact of receiving money from some of the patients does not, we think, at all impair the character of the charity, so long as the money thus received is devoted altogether to the charitable object which the institution is intended to further. And this view has been held where the question has been submitted to the courts. In *Goodrich* v. *Association*, 109 Mass. 558, it was decided that a corporation established for the support of poor and old women, which devotes all its funds to the support of such women in its Home, and is no source of profit to its members, is a charitable corporation, although it requires a payment of money as a requisite for admitting women into its Home. And in *McDonald* v. *Hospital*, 120 Mass. 432, it is held that a corporation, the object of which is to provide a general hospital for sick and insane persons, having no capital stock, nor provision for making dividends or profits, deriving its funds mainly from public or private charity, and holding them in trust for the object of sustaining the hospital, conducting its affairs for the purpose of administering to the comfort of the sick, without expectation or right on the part of those immediately interested in the corporation o receive compensation for their own benefit, is a public

charitable institution, and that the fact that such an institution, by its rules, requires pay of its patients according to their circumstances, does not render it less a public charity.

It appears from the pleadings in the present case, that the whole object of the institution is charity; nobody connected with it can derive any profit from the work carried on there; any profit derived from pay patients is applied exclusively to the charitable purposes of the institution; and every part of the building is used exclusively for a hospital. The object being clearly charitable, and exclusively so, and all ideas of private gain, profit, or advantage being excluded, we are unable to see any reason for holding that the purpose is not "purely charitable" within the meaning of the law.

Nor do any of the cases cited by appellant appear to be at all in disaccord with this view. In *Wyman* v. *St. Louis*, 17 Mo. 335, the building was used in part for a school-house, but the first and second floors were used for other purposes, and it was held that there could not be a separate assessment for that part of the building not used for a school. Mr. Wyman received large rents from the first floor, and also from the second floor, which he rented for concerts, and because he taught school up-stairs in the same building, claimed that the whole of this valuable property should be exempt from taxation. To hold so would have been manifestly against the meaning of the law. A dwelling-house inhabited by a bishop has been held not to be exclusively used for religious purposes (*Vail* v. *Beach*, 10 Kan. 214), nor do we see why a building must be used exclusively for religious purposes because it is the residence of a clergyman.

St. Mary's College farm was held not exempt, because it was used, not directly, but only indirectly, for educational purposes. The fact that the profits of the farm went to the support of the college was held not enough to exempt it. 10 Kan. 442. These cases are not parallel with the one before us.

We are clear that the judgment of the Circuit Court should be affirmed, and it is so ordered. All the judges concur.