State of Missouri ex rel. Evangelical Lutheran Cemetery Asssociation, Appellant *v.* Robert Lange, Assessor, Respondent.

### February 24, 1885.

1. Taxes — Exemptions — Construction of Grants. — Grants of exemption from taxation must be strictly construed, and the grantee can take nothing by intendment or implication.
2. —— Cemeteries. — A charter exemption of property from taxation "so long as the same shall remain dedicated to the purposes of a cemetery," can not be made to include a lot of ground which is rented out to a third person who uses it as a residence˝and for purposes of husbandry.

Appeal from the St. Louis Circuit Court, Thayer, J. *Affirmed.*

W. B. Thompson, for the appellant : That a portion of the ground is used by the sexton of the cemetery association will not prevent an application thereto of the grant of exemption. — *The State ex rel.* v. *Powers*, 10 Mo. App. 263 ; *s. c.* 74 Mo. 476 ; *North, etc., Society* v. *Hudson*, 12 Mo. App. 342.

Leverett Bell, for the respondent : The ground is not used for cemetery purposes under a strict construction of the grant. — *The People* v. *Cemetery*, 86 Ill. 336 ; *Mulroy* v. *Churchman*, 52 Iowa, 238.

Rombauer, J., delivered the opinion of the court.

Among the sovereign powers of the modern state, the power of taxation is the most essential. Using the words

of Chief Justice Marshall, we may say that " as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the state to abandon it does not appear." *Provident Bank* v. *Billings*, 4 Pet. 561, 562. It necessarily follows from this, that all grants made by the state, be it to individuals or corporations, exempting them or their property from taxation must be construed, though reasonably, yet with the greatest strictness against the grant. Indeed, while courts may sometimes have failed in the correct application of the principle, they have never hesitated to assert it as fundamental, that in grants of this character the grantee can take nothing by intendment or implication, which lies beyond either the letter or spirit of the grant, that courts are not justified to refine for the purpose of resolving any latent doubt in favor of the grantee, but should decide, that if any doubt exists as to the terms or extent of the grant, the benefit of that doubt belongs to the people.

Starting from these premises and applying these unquestioned propositions to the facts of the case before us, we must reach the conclusion that the court below committed no error in denying to the relator a peremptory writ.

This is a proceeding by *mandamus* to compel defendant who is assessor of the city of St. Louis to cancel his official assessment of a lot of ground, because such lot is exempt from taxation by the terms of relator's charter.

The relator is a cemetery association, and is authorized by its charter to acquire and hold a tract or tracts of land not exceeding forty acres to be appropriated and used for a cemetery or burial ground. Its charter further provides that no sale of lots in said cemetery, or in any additional tract of land, purchased for the purpose aforesaid, shall be made, until at least one-fourth of said cemetery, or any tract of land appropriated by the corporation for the pur-

pose aforesaid shall be laid off in suitable lots, etc.   The last section of the charter, under which the exemption is claimed, is in the following words: " Said cemetery is hereby declared exempt from all taxes and assessments so long as the same shall remain dedicated to the purposes of a cemetery." It must be evident from the terms of the charter herein set out, that the exemption claimed does not attach to the lands, simply because they are owned by the relator, nor does it attach to lands which the corporation may have purchased with a view of making a cemetery thereon.   If such would have been the intention of the legislature it would have in express terms exempted all lands owned by the corporation, because the power of the corporation to hold lands is limited to forty acres, and the purpose for which it may acquire them, is limited to cemetery purposes. On the contrary, the charter in express terms draws a distion between the cemetery, which is exempt, and other tracts, which the corporation may acquire for cemetery purposes.

The corporation own two tracts of land divided and separated by a public highway, one consisting of lot 14, in James B. Clay's subdivision, and the other of lots 139, 140, 141, 142, and 143 of North Cote Brilliante subdivision, having acquired both tracts in 1867, about two years after its incorporation.   Both tracts together do not exceed forty acres.

On the larger of these two tracts, it has laid out a cemetery, and has subdivided part of it into lots which it has sold for purposes of interment.   This tract never was assessed for taxation, it being conceded that it is exempt under the terms of relator's charter.   The smaller tract the corporation rents out to its sexton, who occupies it as a residence, and uses it for market and ornamental gardening, and who pays to the corporation for such use an annual rent of one hundred and fifty dollars.   This smaller tract has been thus used ever since the corporation ac-

quired it, and such use as far as the evidence shows may be continued for all time. It is this smaller tract which relator claims is also exempt from taxation on the ground that it is used for cemetery purposes. This use relator is endeavoring to establish by testimony tending to show that the money paid by the sexton is not by way of rent, but by way of a bonus for holding the position of sexton ; that while the sexton raises vegetables on the land, and cultivates about one-half thereof for that purpose, which vegetables he sells in the open market, he also raises flowers and ornamental shrubs, which he sells to owners of lots in the cemetery across the way for the decoration of graves, and that many years ago some trees were planted on this lot with a view of using it as a cemetery at some future time. Also testimony tending to show that water from the well at the sexton's house is used by him for watering the graves on the other tract, for which service presumably he is likewise paid by owners of the lots, though the evidence is silent on that subject.

It will be seen from the foregoing that we could arrive at the conclusion that this smaller lot is also a cemetery, only by artificial reasoning, and that we would have to refine to a considerable extent to bring it within the terms of the exemption granted. This under the rules of construction applicable to such grants we are precluded from doing.

We do not decide that the corporation has forfeited its right to hold this smaller tract exempt from taxation, we simply hold that the exemption never attached thereto, because whatever the purposes were for which it may have acquired it, it has never been and it is not now a cemetery. Nor do we place any particular stress on the fact that this tract is divided from the cemetery by a public road, except in so far as the highway makes a fixed and defined boundary. Our conclusion would be the same if the dividing line consisted of a fence, or of a furrow drawn across the ground,

provided the two tracts by any fixed line of demarkation were separated from each other, the one being used for the purposes of husbandry, and the other for the purposes of interment.

We are fortified in our conclusion by a carefully decided case, covering almost the identical ground. In *The People* v. *The Cemetery Company* (86 Ill. 336), the exemption claimed rested on much broader ground. The charter exemption there covered not only all lands held by the corporation for burial purposes, but also those "*subservient to burial uses.*" The lands claimed as exempt there were platted and recorded as cemetery grounds, and the corporation had erected on them several buildings occupied by men in its employment, and stables wherein its horses were kept, and as occasion would require the sand and mould was taken from such tract and used for the improvement of the other tract of the company which was in actual use as a cemetery. The two tracts were also only separated by a highway. It was claimed by the company that the term "*subservient to burial uses*" brought the land within the exemption, but the claim was denied by the court. See also *St. Mary's College* v. *Crowl*, 10 Kas. 442.

We are referred to nothing by relator militating against the position which we have herein taken. We are referred to the case of *The State ex rel.* v. *Powers* (10 Mo. App. 264), affirmed by a divided court above (74 Mo. 476) as opposed to the judgment rendered herein by the trial court. Whilst the result reached in that case is not in conflict with the judgement rendered by the trial court in this case, or with this opinion, yet we are free to say that some things were said in the hospital case, by the learned judge who delivered therein the opinion of this court, which do not meet with our unconditional approval.

The judgment of the court denying the peremptory writ is affirmed, all the judges concurring.

Separate opinion by Thompson, J.

I concur generally in the course of reasoning in the foregoing opinion, but I do not think it necessary to say that exemptions from taxation will be construed "with the greatest strictness." Like all other public grants of special privileges in derogation of common right, they are to be strictly construed, which means that nothing is to be taken by implication unless the implication flows necessarily from the terms of the grant. Nor does the opinion of this court in *The State ex rel.* v. *Powers* (10 Mo. App. 263), contain anything which does not meet my unconditional approval.

That decision proceeded on the ground that the hospital of the Alexian Brothers was established and carried on purely for charity, and that the mere circumstance that the brothers accepted money from patients who were able to pay, which money they applied to the care, nursing and sustenance of those who were not able to pay, did not make the purposes of their hospital any the less "purely charitable," within the meaning of the constitutional provision. I do not think that that circumstance made the purposes of their hospital any the less purely charitable, than the fact that a church fair intended to raise money for the support of the church is occasionally held in the church edifice, should operate to subject the edifice to taxation.