HELEN D. WARD, Respondent, v. ST. VINCENT'S HOSPITAL OF THE CITY OF NEW YORK, Appellant.

*Hospital corporation — liability for a nurse's negligent act in applying a hot water bag to a patient — scope of employment of a sister in the hospital who, as alleged, agreed to employ a competent nurse — charge as to a personal assurance only having been given by the sister — testimony of a physician as to the nurse's competency — testimony of the nurse bearing on her competency and skill, and as to whether she erred in judgment or from thoughtlessness — the corporation is not liable in the latter case — a single act of neglect does not establish incompetency.*

In an action brought against a hospital corporation to recover damages for the breach of a contract made between the plaintiff and Sister Ignatius, one of the sisters of charity in charge of the defendant's hospital, by which the latter agreed, for a sufficient consideration, to furnish the plaintiff with a skilled and experienced nurse while she was undergoing and recovering from a surgical operation in the defendant's hospital, it appeared that the nurse assigned to the plaintiff, owing, as alleged by the plaintiff, to her lack of skill and experience, placed an unprotected rubber bag, filled with very hot water, against one of the plaintiff's legs while she was under the influence of ether, thereby causing her to be severely burned.

Upon the evidence, it was a question of fact as to whether Sister Ignatius acted within the scope of her employment in making the alleged contract.

*Held,* that it was error for the court to refuse to charge as follows: "That if the jury find, as a fact, that the plaintiff received no more than the personal assurance of Sister Ignatius, then there was no contract on behalf of the defendant, and the jury must render a verdict for the defendant."

A physician, who had a patient in the defendant's hospital, testified that Miss Kinney (the nurse assigned to the plaintiff) had charge of such patient and that he had occasion to and did observe the way in which she performed her work.

*Held,* that it was proper to ask such physician the following question: " Q. Doctor, from what you saw of Miss Kinney and the manner in which she performed her duties, was she, in your opinion, an ordinarily competent and skillful nurse? "

Miss Kinney was produced as a witness and testified to her instructions and experience in relation to the use of hot water bottles, and also testified that she had had exclusive charge of a certain patient for a certain physician and while so in charge had had occasion to use hot water bottles.

*Held,* that it was proper to ask her the following questions: " Q. Did any one else have charge of putting hot water bottles upon this lady other than yourself? " and " Did you do it yourself, or did you do it under the immediate direction of some one else? " as such questions bore, not only upon her knowledge in respect to the use of hot water bottles, but also upon her competency and skill as a nurse.

Miss Kinney further testified that the hot water bag in question was placed in the plaintiff's bed by another nurse; that when she was about to put the plaintiff to bed after the operation, she found the bag and placed it on the floor and subsequently placed it in the bed. She was then asked: " Q. About how long had the hot water bottle been on the floor  *  *  *  after you put it there, before you took it up to apply it to Miss Ward ? " and, " Q. State whether or not the hot water bag burned your hand at the time."

*Held,* that both the questions were proper as the answers bore directly upon the question whether the witness erred in judgment by reason of lack of training and skill in applying the hot water bag to the plaintiff's leg or whether it was a thoughtless or careless act upon her part;

That, in the latter case, no liability would attach to the defendant.

*Semble,* that, if, prior to the time plaintiff was injured, Miss Kinney had shown herself to be an ordinarily skillful and competent nurse, the single act which caused the plaintiff's injury did not prove her to be incompetent or lacking in skill.

APPEAL by the defendant, St. Vincent's Hospital of the City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of March, 1902, upon the verdict of a jury for $19,420, and also from an order entered in said clerk's office on the 9th day of June, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Austen G. Fox,* for the appellant.

*Abram I. Elkus,* for the respondent.

McLaughlin, J. :

This action was brought to recover damages for the breach of an express contract. This was determined upon a former appeal to this court (39 App. Div. 624). The terms of the contract, according to the allegations of the complaint, are, in substance, that the defendant, for a specific consideration, agreed to furnish the services of a skilled and experienced nurse to the plaintiff while she was undergoing a surgical operation and recovering therefrom in defendant's hospital. The breach alleged is defendant's failure to assign such nurse and that the one which it did assign, by reason of her inexperience and lack of skill, placed an unprotected rubber bag, filled with very hot water, against one of the plaintiff's legs immediately after the operation and while she was under the influence of ether, and she was thereby severely burned and seriously injured. The fact that the plaintiff was burned and injured was not denied, but the existence of the contract and the breach of it were, and these were the principal issues presented at the trial, which resulted in a verdict for the plaintiff, upon which the judgment appealed from was entered.

It seems unnecessary to set out at length the facts established at the trial, inasmuch as they are quite similar to those presented on a former trial and are stated quite fully on a previous appeal (65 App. Div. 64). It is sufficient to say that there was a sharp conflict in the testimony offered by the respective parties upon both of the issues involved. As to the existence of the contract, the plaintiff testified, in substance, and she was corroborated by her sister, Mrs. Howland, that when she went to the hospital she was informed by Sister Ignatius, one of the Sisters of Charity there in charge, that the price of an experienced trained nurse was three dollars per day; that they had eighteen young ladies in the hospital, and they would provide her with the best, to which the plaintiff replied : " That is satisfactory ; that is all right ; send me the best and do for me what you have agreed and promised to do, and then I will leave the selection of the nurse to you." On the part of the defendant testimony was given to the effect that Sister Ignatius had no authority to make any arrangement with the plaintiff which was binding upon the defendant, or which would impose upon it a liability resulting from the selection of the nurse.

As an original proposition, I should very much doubt whether Sister Ignatius, giving to the plaintiff's testimony all that could be claimed from it, had the power to make the contract alleged, even if the defendant itself — a charitable institution — could have done so. (*Downes* v. *Harper Hospital*, 101 Mich. 555; *Hearns* v. *Waterbury Hospital*, 66 Conn. 98; *Gooch* v. *Association for Relief of Aged Females*, 109 Mass. 558; *McDonald* v. *Massachusetts General Hospital*, 120 id. 432; *Benton* v. *Trustees of Boston City Hospital*, 140 id. 13; *Perry* v. *House of Refuge*, 63 Md. 20; *Powers* v. *Massachusetts Homœopathic Hospital*, 101 Fed. Rep. 896; *Joel* v. *Woman's Hospital*, 89 Hun, 73; *Van Tassell* v. *Manhattan Eye & Ear Hospital*, 39 N. Y. St. Repr. 781.) The law, however, has been settled otherwise by this court (39 App. Div. 624), and that is now the law of the case. All that was there held, however, was that upon the facts as then presented, it was a question for the jury to say whether Sister Ignatius acted within the scope of her authority in making the contract alleged. Under this rule it was for the jury to say, upon the facts presented at the last trial, whether Sister Ignatius acted within the scope of her employment in making the contract, and the jury should have been so instructed, and, if I am right about this, then the court erred in refusing, at defendant's request, to give the following instruction to the jury, viz.: " That if the jury find, as a fact, that the plaintiff received no more than the personal assurance of Sister Ignatius, then there was no contract on behalf of the defendant, and the jury must render a verdict for the defendant." If the jury had found that the plaintiff only received the personal assurance of Sister Ignatius, then no one would seriously contend that the defendant was liable to respond in damages because the assurance had not been carried out; in other words, if Sister Ignatius had no power or authority to bind the defendant, and what she did amounted only to a personal agreement on her part, then the defendant was in no way legally obligated to make good damages sustained by reason of the failure of Sister Ignatius to do what she had agreed to.

This brings us to a consideration of the second issue involved, viz., whether or not there was a breach of the contract — assuming one to have been made by the defendant — and here there was also a sharp conflict in the testimony offered by the parties. The testi-

mony on the part of the plaintiff tended to show that the nurse assigned — Miss Kinney — was not an experienced trained nurse in any sense ; that she was only a pupil, pursuing a course of study in the hospital and for which she was paid a small stipulated sum, in addition to her board, while on the other hand, the testimony offered on the part of the defendant tended to show that she had had previous experience in attending surgical cases and had given entire satisfaction upon such occasions ; that she had been previously instructed while in defendant's hospital, by a competent teacher, and especially in the use of hot water bags, when applying them to patients, and that she had had practical experience in the use of such bags.     The defendant produced a physician, who testified that immediately prior to the time the plaintiff was injured, he had a patient in a private room in the hospital, upon whom he performed a serious operation; that Miss Kinney was the nurse who had charge of such patient and that he had occasion to, and did, observe the way in which she performed her work; that she had occasion to use hot water bottles upon such patient from time to time; he was then asked the following question : " Q. Doctor, from what you saw of Miss Kinney and the manner in which she performed her duties, was she, in your opinion, an ordinarily competent and skillful nurse ? "     This was objected to and the objection sustained.     I think this was error. The witness had had daily opportunity of observing the work done by the nurse ; he saw how she did it, and was, therefore, qualified to say whether, in his opinion, she was a skillful and competent nurse.     The necessity for opinion evidence arises whenever it is impossible to state to the jury all of the facts which are essential to enable it to form an accurate judgment.     (*Littlejohn* v. *Shaw,* 159 N. Y. 188.)     Whether or not one be a skillful and competent nurse necessarily depends upon many facts, all of which, from the very nature of things, it is impossible to lay before a jury, and for that reason a physician who has the personal charge of a patient and who daily sees the manner in which a nurse performs her work over that patient is competent to express an opinion, and it hardly seems necessary to cite any authorities to that effect.

Miss Kinney, the nurse, was also produced as a witness, and after

detailing at some length the instructions she had received prior to the plaintiff's injury in the use of hot water bags; the practical experience she had had in their use; the fact that she had attended patients for certain physicians; the length of time she had been employed, she stated that she had exclusive charge of a patient for either Dr. Lusk or Dr. Lowengood, and, while she had charge of that patient, she had occasion to use hot water bottles. She was then asked: " Q. Did any one else have charge of putting hot water bottles upon this lady, other than yourself?" This was objected to and the objection sustained. She was also asked: " Did you do it yourself, or did you do it under the immediate direction of some one else?" This was also objected to and the objection sustained. I think both inquiries were pertinent and the court should have permitted her to answer them. The practical experience which Miss Kinney had had was a proper fact to be considered by the jury as bearing upon the question of whether the defendant had performed its contract — assuming one to have been made — to furnish a skillful and competent nurse. That she had previously taken charge of a patient and while so taking charge had applied hot water bottles without the aid, assistance or advice of others, went not only to her knowledge of the use of hot water bottles, but also to her compe_ tency and skill as a nurse. It certainly was a fact which the jury could consider in determining whether she had the proper skill and training to enable her to use with safety bags filled with hot water.

I am also of the opinion that the court erred in sustaining objections to two other questions put to this same witness. In this connection it appeared that the witness accompanied the plaintiff to the operating room and there remained with her while the operation was being performed. In the meantime another nurse prepared the bed in which the plaintiff was to be put after the operation had been performed, and put in it a hot water bag. When the witness returned with the plaintiff to this room she found the hot water bag in the bed and took it out and placed it upon the floor. This is the bag which she subsequently took from the floor, placed in the bed and which burned the plaintiff. After she had stated the foregoing facts she was asked: " Q. About how long had the hot water bottle been on the floor  *  *  *  after you put it there, before you took it up to apply it to Miss Ward?" This was objected to and the

objection sustained. She was also asked : " Q. State whether or not the hot water bag burned your hand at the time." This was also objected to and the objection sustained. Both of these questions were proper. Answers to them bore directly upon the question as to whether the witness erred in judgment, by reason of lack of training and skill, in placing the hot water bag next to the plaintiff's leg, or whether it was a thoughtless or careless act upon her part. If the latter, no liability attached, and it certainly was for the jury to say which it was, after a due consideration of all the testimony that could be presented bearing on that subject. The least that can be said is that it was some evidence, proper for the jury to consider in determining whether Miss Kinney were a competent and skillful nurse, and being so, defendant was entitled to have the question answered. Exceptions were taken in each instance, and it seems to me they were well taken.

There were other errors assigned to the rulings of the court which would require very serious examination if their consideration were necessary now to a determination of the appeal before us. Several of these relate to the refusal of the court to charge, in one form or another, that if, prior to the time the plaintiff was injured, the nurse assigned had shown herself to be ordinarily skillful and competent, she was not proved to be either incompetent or lacking in skill by the single act which caused the plaintiff's injury. This seems to be the settled rule (*Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y. 356), but it is, however, unnecessary to determine whether it is or not, inasmuch as it is not probable, upon a retrial, the question will again be raised.

The judgment and order appealed from must, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM and HATCH, JJ., concurred ; VAN BRUNT, P. J., concurred in result.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.