No. 30,017.

THE ALPHA TAU OMEGA FRATERNITY, of Lawrence, for Itself and Fifty-two Others, *Plaintiffs*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOUGLAS et al., *Defendants*.

No. 30,030.

THE ALPHA UPSILON CHAPTER OF THE DELTA SIGMA PHI FRATERNITY, of Manhattan, for Itself and Thirty-one Others, *Plaintiffs*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RILEY et al., *Defendants*.

(18 P. 2d 573.)

Opinion filed January 28, 1933.

No. 30,017—*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the plaintiffs.

*M. A. Gorrill, Henry H. Asher, Harry W. Frazee, R. B. Stevens,* all of Lawrence, *Ernest E. Blincoe* and *C. B. Randall,* attorneys for the state tax commission, for the defendants.

No. 30,030—*R. P. Evans* and *George Clammer,* both of Manhattan, for the plaintiffs.

*Neil Dougherty,* county attorney, *F. R. Smith, Alvin R. Springer, Gerald F. Smith,* all of Manhattan, *Raymond E. Smith,* of Marysville, and *Ernest E. Blincoe,* of Topeka, for the defendants.

The opinion of the court was delivered by

SMITH, J.: These are original actions in mandamus brought by plaintiffs for themselves and other fraternities similarly situated in Douglas and Riley counties. Defendants filed a return to the alternative writ. On the issues thus made up a commissioner heard evidence and made findings of fact and conclusions of law. The plaintiffs move this court to approve and confirm the findings of fact except as to certain details. The plaintiffs filed a further motion to set aside certain conclusions. The defendants filed motions to amend certain conclusions of law and to approve certain conclusions of law. These motions present the case to this court on its merits.

The action was occasioned by an effort on the part of the county officials of Douglas and Riley counties and the state tax commission to tax the property of the Greek-letter societies in those counties. Its object is to compel these officials to take this property off the tax rolls.

The commissioner made extensive findings of fact and conclusions of law. The facts necessary for our consideration are that the real estate in question was owned by a corporation organized for the purpose of holding the title; that this corporation is formed by

alumni members of the society, the property is occupied by the members who are in school, and these members pay a certain amount to the holding company each year to be used in paying part of the principal and the interest on the mortgages which are on the property.

The funds necessary to operate the house are raised by dues from the active members or by donations. The house consists of nine study rooms, two libraries, a dining room, a kitchen, music room, living room and dormitory. It is used by the members about as their homes would be used if their parents lived in Lawrence. There is a committee of upper classmen who supervise the study of lower classmen and take disciplinary measures when deemed necessary. The dormitory is on the third floor. Sleeping quarters are available for about fifty people, and from time to time visiting fraternity brothers and athletes are entertained. The society owns and maintains a library for use of the members in their school work.

The house is presided over by a house mother, who assists in giving the members training in etiquette, culture and social decorum. During the school years 1929 and 1930 three parties were given in the house. About $1,000 was spent for these parties. The living room, lounging room and dining room are large and commodious. During the school year card parties, social dances and other functions are given in the house.

No part of the building or grounds was rented or used for profit during the years 1929 and 1930, but when the full purchase price of the property has been paid future members of the fraternity will probably reap the benefits through reduced expense of living during their school life.

On account of a motion that was filed, finding of fact No. 11 will be set out in full. It is as follows:

"The fraternity is a secret and fraternal organization and maintains in the house what is known as a chapter room in which is kept its ritualistic paraphernalia and in which its ritualistic work is conducted. Alumni members continue honorary members of the fraternal side of the organization and are privileged to attend the secret and ritualistic meetings of the chapter."

The further findings were that all the plaintiffs were substantially the same as the one named; that in the year 1930 the assessed valuation of all the real property owned by college fraternities in Douglas county was $899,830, and that the assessed valuation of the personal property was $50,000; that the aggre-

gate tax levied against the real property was $31,044.06 and the total tax levied against the personal property was $1,765.10.

The conclusions of law of the commissioner were as follows:

"I.

"That portion of section 1 of article 11 of the constitution which commands the legislature to exempt from taxation property used exclusively for educational purposes should be strictly construed, and so construed covers only property used exclusively for purposes which are directly and immediately educational.

"II.

"The relation of the use made of the real and personal property of plaintiff to education is not so direct and immediate as to bring it within the mandatory provision of the constitution or of R. S. 79-201.

"III.

"The power of the legislature to exempt property from taxation is not limited to property covered by the mandatory provision of the constitution, but it may, in its discretion, exempt other property where such other property benefits the public in a way different from other property and the legislative power is not used in such a way as to introduce a system of taxation substantially different from that contemplated by the constitution.

"IV.

"R. S. 79-203 is constitutional and valid as applied to all personal property of the plaintiff disclosed by the evidence, except its ritualistic paraphernalia and apparatus, and is valid as to real property used exclusively as a literary hall or as a dormitory.

"V.

"R. S. 79-203 should be strictly construed and, when so construed, the word 'dormitory' is not broad enough to include property in which meals are regularly prepared and served and in which the ritualistic work of a secret fraternal order is regularly carried on.

"VI.

"The writ should be granted as to all the personal property except the ritualistic apparatus and paraphernalia, if any such is listed, and denied as to the real estate."

We will first notice the motion of plaintiff to strike out certain findings. This motion was directed at finding No. 11. It is sought to strike out the part of that finding which finds that plaintiff maintains in the house what is known as a chapter room in which is kept its ritualistic paraphernalia and in which its ritualistic work is conducted. The ground upon which it is sought to strike this finding is that it is not supported by the evidence. Without encumbering this record with a recital of the evidence it is sufficient

to state that there is ample to support this finding. That motion is overruled.

The defendants filed motions attacking the conclusion of law which held that the personal property of the societies not used in ritualistic work is exempt. These motions will be considered later.

With that motion out of the way we may examine the result of the commissioner's report. It is that the real estate owned by the fraternities should be taxed; that their personal property used in ritualistic work should be taxed, and that their personal property other than that used in ritualistic work should not be taxed.

The findings of the commissioner may be condensed by stating that a holding company has the legal title to the real estate in question; that it is occupied by a society of students as a home or boarding house while they attend the university, and that the society selects its own members. In addition to the trigonometry and Greek which the students learn in the classroom they are taught in the fraternity house how to enter a ballroom, which fork to use first and what well-dressed young men should wear.

There are two provisions under which the property of college fraternities has not been taxed. One is the constitutional provision, section 1 of article 11. It is as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide. *All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes,* and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation (Italics ours)."

In this action plaintiffs rely on the italicized language. The other is the provision of R. S. 79-203, which is as follows:

"All real estate not exceeding one-half acre in extent and the buildings thereon situate, and used exclusively by any college or university society as a literary hall or as a dormitory, if not leased or otherwise used with a view of profit, and all books, furniture, apparatus and instruments belonging to such society, shall be exempt from taxation."

It will be seen that the conclusion of the commissioner is that the relation of the uses made of the property to education is not so direct and immediate as to bring it within the constitutional provision. He further held that the other uses that the society makes of the building prevent it from being classed as a dormitory within the meaning of R. S. 79-203.

In the consideration of an original action this court is not bound by the findings of its commissioner as it is by the findings of a trial court. They are advisory merely. When the findings are questioned it is our duty to examine the entire record. There is no necessity for that in this case, however. The facts are fairly and completely found by the commissioner. Indeed, there is hardly anything in the findings of fact that was not generally known when the action was filed.

We shall first consider whether the property is exempt under the constitution. To be exempt under this provision it must be used exclusively for educational or literary purposes. That use must be exclusive and it must be immediate and direct.

The section in question has been interpreted many times. In *Washburn College v. Comm'rs of Shawnee Co.*, 8 Kan. 344, Justice Brewer said:

"All property receives protection from the state. Every man is secured in the enjoyments of his own, no matter to what use he devotes it. This security and protection carry with them the corresponding obligation to support. It is an obligation which rests equally upon all. It may require military service in time of war or civil service in time of peace. It always requires pecuniary support. This is taxation. The obligation to pay taxes is coextensive with the protection received. An exemption from taxation is a release from this obligation. It is the receiving of protection without contributing to the support of the authority which protects. It is an exception to a rule and is justified and upheld upon the theory of peculiar benefits received by the state from the property exempted. Nevertheless, it is an exception, and they who claim under an exception must show themselves within its terms." (p. 348.)

The above rule has been announced and followed many times by this court, the most recent citation being *Manhattan Masonic Temple Ass'n v. Rhodes*, 132 Kan. 646, 296 Pac. 734. That case treated the question of whether a Masonic temple was exempt. It was said:

"The leading cases construing statutory exemptions from taxation as' affecting the property of Masonic and similar organizations are collated in 22 A. L. R. 907-939. In that annotation Kansas is properly classified with the jurisdictions which adhere to the rule that constitutional and statutory provisions exempting property from taxation are strictly construed and all doubts resolved against the exemption. The rule of strict construction of statutes making exemptions from the burden of taxation which rests on the generality of persons and property has always prevailed in this state." (p. 649.)

It does not require the further citation of cases to establish the rule

that the provision under consideration must receive a strict interpretation.

Equally well established is the rule that this use of the property for literary and educational purposes must be exclusive and immediate and direct. It has been held that where a building was bequeathed to the Kansas Educational Association of the Methodist Episcopal church and was rented by the association and the proceeds used for educational purposes while awaiting a chance to sell it, such use for educational purposes was not exclusive and hence the property not exempt. (See *Stahl v. Educational Ass'n*, 54 Kan. 542, 38 Pac. 796.) An early case on this point is *St. Marys College v. Crowl*, 10 Kan. 442, where it was held:

"Property, in order to be exempt from taxation, because used for educational purposes, must be used directly, immediately and exclusively for such purposes."

This case has been followed and quoted so many times that it is unnecessary to give further citations on that point.

Since we have these two points settled we now have only to discuss whether the property in question is clearly used for educational purposes and whether this use is immediate and direct and exclusive.

Those who insist that the use is exclusive and direct and immediate for educational purposes say that the fraternity is simply a home—that the home is so regulated and managed that the student receives as much education from his fraternity as from the classroom. They attempt to bring plaintiffs within the rule laid down in *Kansas Wesleyan University v. Saline County Comm'rs*, 120 Kan. 496, 243 Pac. 1039, where it was held that the residence of the president of the college situated across the street from the campus was exempt. In that case the trial court found that "the close proximity of the president to the activities of the institution is proper and necessary to a more orderly and efficient discharge of his official duties." In the opinion it was said:

"Where such occupancy is for the benefit of the school rather than of the occupant, is intended to serve the ends for which the school is maintained, is adapted thereto and actually accomplishes that object, it becomes in itself an exclusively educational use." (p. 497.)

The above cannot be said for a building occupied as a chapter house by a college fraternity. It certainly is not for the good of the whole school. Only a small proportion of the students belong to fraternities. The schools could very well be maintained—indeed for many years were maintained—without them. While students are

necessary to a university and students must have homes, still it does not follow that the homes where students live are used exclusively for educational purposes. The point is that these same students would still need homes if they never saw the university. It would be just as logical to say that the coonskin coat that the student wears to class, or the car he drives, is used exclusively and directly and immediately for educational purposes.

The Masonic lodge needs no one to tell of the work it does by way of teaching the principles of morality, temperance, benevolence and charity, yet this court held that a building used as a lodge room by that organization was not used exclusively for benevolent and charitable purposes so as to make it exempt from taxation. (*Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 296 Pac. 734.) The purposes for which the Masonic Temple was used and which were claimed to make it exempt were much more direct and immediate than the use of the property in question for the purposes of education.

There are authorities to sustain this view. In *Knox College v. Board of Review,* 308 Ill. 160, 35 A. L. R. 1041, the court construed a provision of the constitution which provided that all property used exclusively for school purposes and not leased or otherwise used with a view to profit should be exempt from taxation. A college fraternity sought exemption under it. The court said:

"The fraternity houses here in question, however, are not shown by the evidence to be buildings created for the indiscriminate use of all the students, but are, as we understand the record, open only to the members of the respective fraternities, not by virtue of their college attendance, but only upon election to membership in such fraternities under rules established by the societies themselves. Because some advantage might accrue to the college by the fraternities furnishing accommodations for students, thus lessening the need for college dormitories, and because the contractual relations between the fraternities and the college made these fraternity buildings mutually advantageous to the college and students, that does not change the fact that they are fraternity houses not unconditionally open to all students and not ostensibly or actually used exclusively for educational purposes." (p. 166.)

In *People v. Lawler,* 77 N. Y. Supp. 840, the court considered a statute which provided:

" 'The real property of a corporation or society organized exclusively for the moral or mental improvement of men or women, or for . . . educational, scientific, literary, library . . . purposes, . . . or for the two or more of such purposes, and used exclusively for carrying out thereupon

one or more of such purposes, and the personal property of any such corporation or association, shall be exempt from taxation.' "

A college fraternity sought to come under it. The court considered the use of the property and said:

"And while it may be said that the relator is connected with Hamilton College, and that its chapter house is in a certain sense an adjunct thereto, yet, so far as ownership, occupation, and control are concerned it is entirely independent of the college. Its primary purpose is to afford the members of the fraternity owning it with an abiding place while attending college. It is there that they eat and sleep; it is there that they mingle with each other in social intercourse; it is there that they entertain their friends, and to that end indulge in dancing and other similar amusements. In short, it is to all intents and purposes a clubhouse, a place for rest, recreation, and fraternal intercourse, rather than for the purposes for which it is claimed to have been organized, which purposes are plainly secondary and incidental." (p. 843.)

In *Phi Beta Epsilon Corporation v. Boston,* 182 Mass. 457, in considering the use to which a fraternity house was put the court said:

"But the housing or boarding of students is not of itself an educational process any more than is the housing or boarding of any other class of human beings." (p. 459.)

In *Orono v. Sigma Alpha Epsilon Society,* 105 Me. 214, 217, the court considered a statute which authorized the exemption of the real estate of all literary and scientific institutions occupied by them for their own purposes, or by any officer thereof as a residence. A college fraternity sought to come under it. The court denied exemption and said:

"The corporate purposes of the defendant are neither literary nor scientific. They are rather domestic, in the nature of a private boarding house, and such is the business that it carries on."

In the case of *St. Marys College v. Crowl,* 10 Kan. 442, the court held that where land was owned by St. Marys College and cultivated by it and the produce sold and the proceeds used to maintain the college, it was not exempt because it was used for educational purposes. It was argued that the land should be exempt because the Indians who attended the school were taught farming while cultivating it. Justice Valentine, speaking for the court, said:

"If the employment of Indians on a farm, and teaching them how to cultivate it, would exempt all the cultivated land of such farm from taxation—if it would also exempt all the wild, uncultivated, and uninclosed prairie land used for grazing or for cutting hay from taxation—if it would exempt all the woodland from which wood was taken from taxation—if it would exempt all

the horses, neat cattle, and other stock kept on said farm, the pleasure carriages, farming implements, etc.—then every farmer in the state might obtain an Indian (or indeed he might obtain any other person) and commence teaching him agriculture, and thereby exempt all his property from the burdens of taxation. And, also, by analogy, every blacksmith, or other mechanic, might obtain an apprentice and teach him his trade, and thereby exempt his shop and tools from a like burden. And, also, every householder might teach his own children their alphabet, etc., and thereby relieve his homestead from the burdens of taxation, for his homestead would then, of course, be used partially for purposes of education." (p. 452.)

Of this case it may be said, if the rule contended for by plaintiffs be adopted, there is no reason to suppose that a single home in any town where a college is located would pay any tax. If a home maintained for a college boy or girl is used exclusively for educational purposes, then every house in Lawrence will have a college student in it by spring. Indeed the argument of plaintiffs need not be confined to colleges and universities. Grade schools and high schools are educational. Few homes in the state do not have a child of some school age. Who will pay to maintain these institutions if all the property used as a home for a school boy or girl is taken off the tax rolls?

We conclude that the property in question is not exempt under the constitution.

There remains then an examination of the question of whether the property is exempt under R. S. 79-203.

Defendants urge that this statute is unconstitutional on the ground that it violates that part of section 1, article 11, of the constitution which provides that the legislature shall provide for a uniform and equal rate of taxation.

A statutory exemption may be broader than the constitutional one. In *Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977, this court said:

"Yet the constitution itself provides that some real estate and some personal property shall be exempt, and contemplates that further exemptions may be made. Such exemptions must rest on the definite basis of promoting the public welfare in some peculiar and substantial way, and even then they cannot be tolerated to the extent of building up large accumulations of favored property which would disturb general equality and uniformity." (p. 68.)

In *Gunkle v. Killingsworth,* 118 Kan. 154, 233 Pac. 803, the court said:

"While the constitution provides that certain property shall be exempt from taxation, it does not declare that other exemptions may not be made, but

does provide that property subject to taxation shall be taxed at a uniform and equal rate. So it has been held that the enumerated exemptions must be made, but that more exemptions may be made by the legislature. (*Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234; *Francis, Treas., v. A. T. & S. F. Rld. Co.,* 19 Kan. 303; *Comm'rs of Sumner County v. Wellington,* 66 Kan. 590, 72 Pac. 216; *Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977.)" (p. 156.)

An examination of those cases which have held that the legislature may exempt property from taxation, in addition to what is exempted in the constitution, will be helpful in our consideration of whether the property of a college fraternity promotes the public welfare in such way as to make the statute in question constitutional. *Francis, Treas., v. A. T. & S. F. Rld. Co.,* 19 Kan. 303, was a case where the legislature had provided for taxing railroads in unorganized counties. Other property in the unorganized counties was not taxed. The statute was attacked on the ground that it violated the uniform and equal clause. The court upheld the right of the legislature to exempt property not named in the constitution, and based its decision on the ground that to extend the taxation machinery into the unorganized counties would place a greater burden on the state than the tax on property other than railroads would amount to. In *Sumner County v. Wellington,* 66 Kan. 590, 72 Pac. 216, an attempt was made to tax a water plant that was owned by the city of Wellington and supplied water to its inhabitants. The statute made public ownership the ground of immunity from taxation. This was attacked on the ground that it violated the uniform and equal clause. The court said:

"Certain exemptions are therein prescribed which the legislature cannot ignore; but it does not forbid the exercise of the inherent power of the legislature to exempt property from taxation when in its judgment it may conduce to the public welfare." (p. 593.)

The case of *Wheeler v. Weightman,* supra, held that a statute which provided for a registration fee for real-estate mortgages, and that mortgages on which this fee had been paid should be exempt from other-taxation, was invalid. The opinion is a lengthy examination of cases from this and other states. It is of interest to us on account of what was said about the authority of the legislature to give greater exemptions than the constitution. It was said, referring to *Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344:

"Besides this, an exemption from taxation, granted through favoritism or other arbitrary motives, of property not benefiting the public in any way dif-

ferent from other property of the state, could not be sustained even although the financial effect of the exemption might not be appreciably felt." (p. 61.)

Later in the opinion this was said:

"The notion that property taxes might be abandoned and that the public revenues might be raised by franchise, privilege, and occupation taxes, and other taxes of like kind, was not present in the minds of the framers of the constitution or of the people who adopted it. To their minds the property of the state was to be taxed as a matter of course, and all property was to be taxed according to its value, except that property which served the state in some peculiar way, whereby public benefits resulted equivalent to the benefits derived from taxes, might be exempted." (p. 64.)

Later this language was used:

"No one could successfully contend that all personal property in the state may be exempted from taxation, or that all property belonging to corporations, or to a class of corporations, like railroads, may be exempted from taxation. To do so would manifestly violate the rule of uniformity and equality." (p. 68.)

In *Gunkle v. Killingsworth*, supra, the court considered the constitutionality of an act which exempted rural-credit shares of a building and loan association. The act was upheld. The court said:

"The aim of the act is a beneficent one, manifestly enacted to advance a policy, coupled with a public interest and to accomplish a public purpose." (p. 156.)

It will be seen that the rule running through all our cases is that attempts of the legislature to extend the exemption beyond that provided in the constitution, must be intended to accomplish a public purpose or have a beneficent aim, or be intended to promote the public welfare in some substantial manner. Does the act in question do this? Manifestly not. It exempts the property used by any college or university society as a literary hall or dormitory. We cannot shut our eyes to the fact that in the college and university towns of the state there has come into being two classes of boarding houses—one that pays taxes and one that does not. We cannot shut our eyes to the fact that the class that does not pay taxes has become large enough to constitute an appreciable portion of the property of the city. It receives all the benefits from the facilities maintained in the city by taxes on the remaining property. We hold that this is not a beneficent or public purpose, nor does it promote the public welfare. The act, therefore, violates section 1, article 11, of the constitution, and is void. Since this conclusion has been

reached, it will not be necessary to consider the other interesting question raised in the briefs.

The writs will be denied both as to the real estate and as to the personal property of the plaintiffs.

THIELE, J., not participating.

BURCH, J., concurring in the result.