No. 72,135

STATE OF KANSAS *ex rel.* ROBERT T. STEPHAN, Attorney General, *Petitioner*, v. NANCY PARRISH, in her capacity as Secretary of the Kansas Department of Revenue, and DAVID CUNNINGHAM, in his official capacity as Director of Property Valuation, *Respondents.*

(891 P.2d 445)

Opinion filed March 10, 1995.

*Julene L. Miller*, deputy attorney general, argued the cause, and *Robert T. Stephan*, attorney general, and *John W. Campbell*, deputy attorney general, were on the briefs for petitioner.

*William E. Waters*, of the Kansas Department of Revenue, argued the cause and was on the brief for respondents.

*Gerald N. Capps*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, was on the brief for *amicus curiae* Commercial Property Association of Kansas.

*Gary A. Nelson*, of Murray, Tillotson & Nelson, of Leavenworth, was on the brief for *amicus curiae* A Group of Taxpayers in Leavenworth County, Kansas.

The opinion of the court was delivered by

HOLMES, C.J.: This is an original action in mandamus and quo warranto brought by the Attorney General against the Secretary of the Kansas Department of Revenue and the Director of Property Valuation as respondents. At issue is the constitutionality of 1994 S.B. 542 § 14, now codified at K.S.A. 1994 Supp. 79-1427c. For the sake of uniformity and simplicity we will refer to it as § 14 throughout this opinion. The Attorney General asserts that § 14 violates the uniform and equal taxation provision of Article 11, § 1 of the Kansas Constitution. The respondents and *amici* disagree.

The relevant facts, which are uncontested, are set forth in the Attorney General's petition as follows:

"4. In its 1994 session the Kansas Legislature by majority vote approved the provisions of 1994 Senate Bill No. 542. The Honorable Joan Finney, Governor of the State of Kansas subsequently signed 1994 SB 542 into law, effective upon publication in the statute book.

"5. Section 14 of 1994 SB 542 provides that:

'New Sec. 14. If, from and after January 1, 1994, and on or before March 14, 1995, the county or district appraiser discovers any taxable tangible personal property which would be subject to a penalty pursuant to the provisions of K.S.A. 79-1427a, and amendments thereto, such property shall be listed and appraised and taxes collected thereon as provided in K.S.A. 79-1427a, and amendments thereto; however, such property shall not be liable for any taxes that would have been levied against such property for any year prior to the 1992 tax year and no penalty shall be added. Notwithstanding the foregoing, the penalties prescribed by K.S.A. 79-1427a, and amendments

thereto, shall be added whenever any person, association, company or corporation that has fraudulently failed to list or has fraudulently underreported tangible property required to be listed for taxation as provided in K.S.A. 79-306, and amendments thereto. Such fraud shall be proven by clear and convincing evidence.'

"6. On June 17, 1994, the Attorney General issued an opinion concerning § 14 of SB 542 in which he opined:

'By releasing the property tax obligation for certain discovered escaped personal property upon which taxes have become delinquent, but not granting a similar benefit for those who timely paid their personal property taxes, section 14 of 1994 senate bill no. 542 violates the uniform and equal provision of article 11, section 1 of the Kansas Constitution.'

"7. On June 28, 1994, the Attorney General met with David Cunningham, Director of Property Valuation. At that meeting Mr. Cunningham indicated that it was his position and the position of the Secretary of Revenue that § 14 of SB 542 would be implemented, as written, until such time as a court of law found the same to be unconstitutional."

This action was filed July 8, 1994, and on August 30, 1994, by agreement of the parties, this court granted the Attorney General's motion for a peremptory order in mandamus, thereby enjoining the Kansas Department of Revenue from implementing § 14.

The sole issue before the court is whether § 14 of 1994 S.B. 542 is unconstitutional as violative of the uniform and equal taxation provision of Article 11, § 1 of the Kansas Constitution.

At the outset we deem it advisable to consider whether this action seeking a writ of mandamus and quo warranto is the appropriate vehicle for the relief sought.

In *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 716, 792 P.2d 971 (1990), we reaffirmed our often-stated position on this question:

"This court has consistently recognized that mandamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business, notwithstanding the fact that another adequate remedy at law exists. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 52, 687 P.2d 622 (1984); *Board of Sedgwick County Commr's v. Noone*, 235 Kan. 777, 779, 682 P.2d 1303 (1984); *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, 26, 643 P.2d 87 (1982)."

The Attorney General asserts that this case is one of statewide importance. In doing so, he advances the following reasons:

"People in all of the 105 counties in the state are impacted by §14. Local government entities which serve the people are dependent in part on moneys generated by personal property taxes. An authoritative state wide judicial ruling is required for the swift and uniform resolution of this controversy.

"An authoritative ruling is needed not only in order to guide the petitioner and respondents, but is needed in order to provide guidance for the various county and district appraisers located throughout the state.

"This matter is one of immediate concern due to the fact that various lawsuits have been threatened regarding this matter. There is a real danger of inconsistent rulings from the district courts which could result in unequal taxation in the state. Millions of dollars, held by thousands of people, are at stake in this litigation.

We agree that the use of mandamus is an appropriate and proper means for presenting the issue raised and that the court should accept jurisdiction of this case.

Before addressing the issue before us, we reiterate some of the general rules of constitutional construction. In *State ex rel. Schneider v. Kennedy*, 225 Kan. 13, 20-21, 587 P.2d 844 (1978), we stated:

"It is fundamental that our state constitution limits rather than confers powers. Where the constitutionality of a statute is involved, the question presented is, therefore, not whether the act is authorized by the constitution, but whether it is prohibited thereby. [Citations omitted.]

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]

"Courts do not strike down legislative enactments on the mere ground they fail to conform with a strictly legalistic definition on technically correct interpretation of constitutional provisions. The test is rather whether the legislation conforms with the common understanding of the masses at the time they adopted such provisions and the presumption is in favor of the natural and popular meaning in which the words were understood by the adopters. [Citations omitted.]

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in

the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere. [Citations omitted.]"

Article 11, § 1 of the Kansas Constitution, in pertinent part, states:

"(a) The provisions of this subsection shall govern the assessment and taxation of property on and after January 1, 1993, and each year thereafter. *Except as otherwise hereinafter specifically provided, the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation.*" (Emphasis added.)

Although this section of the constitution has been amended several times, most recently in 1992, the provision relating to the equal and uniform basis of taxation has been in effect since the original adoption of the constitution in 1859.

Section 14 of 1994 S.B. 542 provides:

"New Sec. 14. *If, from and after January 1, 1994, and on or before March 14, 1995, the county or district appraiser discovers any taxable tangible personal property which would be subject to a penalty pursuant to the provisions of K.S.A. 79-1427a, and amendments thereto, such property shall be listed and appraised and taxes collected thereon as provided in K.S.A. 79-1427a, and amendments thereto; however, such property shall not be liable for any taxes that would have been levied against such property for any year prior to the 1992 tax year and no penalty shall be added.* Notwithstanding the foregoing, the penalties prescribed by K.S.A. 79-1427a, and amendments thereto, shall be added whenever any person, association, company or corporation that has fraudulently failed to list or has fraudulently underreported tangible property required to be listed for taxation as provided in K.S.A. 79-306, and amendments thereto. Such fraud shall be proven by clear and convincing evidence." (Emphasis added.)

K.S.A. 1994 Supp. 79-1427a, referred to in § 14, provides that any taxable personal property omitted from the tax rolls shall, upon discovery, be placed on the tax rolls as property "deemed to have escaped taxation" and shall be subject to taxation and to a 100 per cent penalty. Property listed, but underreported, is also "deemed to have escaped taxation" and is subject to similar taxation and penalties. In addition, the property deemed to have escaped taxation shall be subject to tax and the 100 per cent penalty for the four previous years.

Section 14 was apparently adopted by the legislature in 1994 at the request of a number of Leavenworth County taxpayers who had omitted or underreported personal property based upon their misunderstanding of the statutes and what they allege to be past practices and directions of the Director of Property Valuation and the county appraiser. They also argue that in 1989 through 1992, the county appraiser did not advise taxpayers about the classification of personal property which resulted from changes in Art. 11, § 1. As a result personal property not previously subject to taxation became so without adequate notice to the taxpayers. In 1993 the Leavenworth County appraiser began auditing personal property rendition sheets for 1993 and prior years and sought to collect the taxes and penalties owed on the escaped property.

*Amicus curiae* A Group of Taxpayers in Leavenworth County (hereinafter Leavenworth Taxpayers) assert § 14 "was a piece of hastily drafted legislation in response to a course of action taken by the Leavenworth County Commissioners and the Leavenworth County Appraiser." As so often happens in many well-meaning endeavors, it is not unusual for such action to result in the old maxim of "haste makes waste." The respondents, as well as the Leavenworth Taxpayers, assert in their briefs that § 14 merely creates a "window of opportunity" for taxpayers to voluntarily come forward and reveal escaped property and thereby avoid past taxes and penalties which would otherwise be due. One obvious flaw in such an argument is that § 14 is not limited to voluntary listing of escaped property and, in fact, according to *amicus*, was brought about by the aggressive tax collection procedures adopted by the county appraiser in 1993. *Amicus* states: "In late 1993 and 1994, an out-of-state tax ferret was hired on a commission basis to come in and conduct appraisals." If correct, we assume the action of the county commissioners was based on our decision in *Dillon Stores v. Lovelady*, 253 Kan. 274, 855 P.2d 487 (1993).

The Attorney General argues § 14 violates the Kansas Constitution, which requires the legislature to provide for a uniform and equal basis of valuation and rate of taxation. Specifically, the Attorney General maintains that § 14 is a retro-active property tax exemption, which creates an improper or preferential classi-

fication of property in violation of Kan. Const. Art. 11, § 1. It is argued that the newly created tax exemption is arbitrary and unreasonable in that it treats similarly situated taxpayers differently. In substance, the exemption works as a classification based upon a characteristic or status of the taxpayer and not the property or use thereof. By providing unspecified taxpayers an amnesty window as a means of avoiding unpaid property taxes, all tangible personal property owners are divided into two classes: those who pay taxes on time and those who do not.

The respondents dismiss the Attorney General's arguments as misplaced and argue § 14 does not create a tax exemption. Instead, they, along with *amici curiae,* maintain that § 14 is a modification of the applicable statute of limitations. Specifically, they assert § 14 is a valid modification of the limitation period in which the State may collect escaped tangible personal property taxes, as provided for in K.S.A. 1994 Supp. 79-1427a(c). Alternatively, respondents argue that if § 14 is construed as a tax exemption by this court, it is not in violation of the uniform and equal taxation provision of Art. 11, § 1 in that it is rationally based and therefore constitutionally permissible.

Leavenworth Taxpayers contend that the statute creates a "window of opportunity" for taxpayers to voluntarily come forward and submit appropriate personal property rendition sheets listing all of their taxable property. They assert the statute creates a temporary "Statute of Limitations for a very short period of time" rather than an exemption as argued by the Attorney General.

*Amicus curiae,* Commercial Property Association of Kansas, also contends that § 14 is merely a statute of limitations and not a tax exemption, but in addition bases a significant portion of its brief on the power of the legislature to authorize the abatement, cancellation, and compromise of taxes. In doing so it relies upon four older cases involving real property held by the county under tax foreclosure proceedings. *State, ex rel., v. Wyandotte County,* 154 Kan. 222, 117 P.2d 591 (1941); *Trust Co. v. Davis,* 76 Kan. 639, 92 Pac. 707 (1907); *Baker v. Atchison County,* 67 Kan. 527, 73 Pac. 70 (1903); *Ide, Receiver v. Finneran,* 29 Kan. 569 (1883). All of these cases are readily distinguishable from the present case

and not persuasive here. However, one comment by Justice Mason in *Trust Co.* is enlightening:

"Whether a statute authorizing the acceptance of a part of the tax for the whole is passed before or after the levy, it is obnoxious to the constitution if regarded as a favoritism extended to the property owner, but not if regarded as a permission granted to the local officers to accept less than full amount due only because experiment has demonstrated that no more can be obtained." 76 Kan. at 643.

We agree that the legislature may authorize the abatement, cancellation, and compromise of taxes in appropriate circumstances and when done within the limits of the constitution.

The Attorney General, in arguing that § 14 creates an unconstitutional retroactive property tax exemption, relies upon *State ex rel. Tomasic v. City of Kansas City,* 237 Kan. 572, 701 P.2d 1314 (1985), for the standard to be applied here. In *Tomasic* we stated:

"In ruling on the constitutionality of statutory exemptions, this court has generally considered four key elements: (1) whether the exemption furthers the public welfare, *State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P.2d 373 (1949); (2) whether the exemption provides a substantial, peculiar benefit, *Alpha Tau Omega v. Douglas County Comm'rs.,* 136 Kan. 675, 18 P.2d 573 (1933); (3) whether the exemption provides for large accumulations of tax-exempt property; and (4) whether the exemption is an improper or preferential classification of property, *State, ex rel., v. Board of Regents,* 167 Kan. 587." 237 Kan. at 579.

In addition to the four-prong *Tomasic* test, this court has articulated various guidelines to be considered and applied in determining whether tax exemptions are constitutionally permissible. These guidelines or rules were enunciated in *State ex rel. Tomasic v. Kansas City, Kansas Port Authority,* 230 Kan. 404, 411-12, 636 P.2d 760 (1981), as follows:

"Under the general rule all property is subject to taxation unless specifically exempted. [Citation omitted.] Property which is subject to taxation is taxed at a uniform and equal rate. [Citations omitted.] However, tax exemptions are constitutionally permissible. One type of tax exemption is the constitutional exemption which demands the property be 'used exclusively' for specified purposes. [Citations omitted.] The constitution does not provide, however, that other exemptions may not be made. [Citations omitted.] The legislature may provide other statutory exemptions if such exemptions have a public purpose and promote the general welfare. [Citations omitted.] Such statutory exemptions

may be broader than the constitutional ones. [Citations omitted.] 'Within the scope of legislative power, the legislature itself is the judge of what exemptions are in the public interest and will conduce to the public welfare.' [Citations omitted.]"

In *City of Liberal v. Seward County,* 247 Kan. 609, 612-13, 802 P.2d 568 (1990), additional guidelines were summarized and stated:

" 'Whether particular property is exempt from ad valorem taxation is a question of law if the facts are agreed upon. [Citation omitted.] Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. [Citations omitted.] Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against exemption. [Citations omitted.] Where the language of a statute, in particular, is relied upon as creating an exemption from taxation, it must be strictly construed against the party claiming the exemption, and he must bring himself clearly within the exemption. [Citations omitted.] Strict construction, however, does not warrant unreasonable construction. [Citation omitted.]' "

Based upon the foregoing guidelines the Attorney General argues that the traditional rational basis test usually applied to equal protection arguments does not apply in determining the constitutionality of tax exemption statutes. It is urged that we articulate a new and higher standard for such cases. We do not view the *Tomasic, Kansas City, Kansas Port Authority,* and *City of Liberal* guidelines as creating some new heightened degree of judicial scrutiny, applicable to tax cases. Rather than create yet another level of judicial scrutiny, we view the foregoing guidelines as rules of law to be considered in determining, in any particular case, whether the legislature had a rational basis for its action.

The Attorney General in asserting that § 14 creates an unconstitutional tax exemption argues that it is not based upon a permissible classification of personal property but on an impermissible classification of property owners. The two classes of property owners constitute those who paid taxes and those who did not and creates an exemption for the latter group in which the qualification for the exemption is dependent solely upon the failure to report or the underreporting of personal property and the nonpayment of taxes thereon, and the subsequent discovery and re-

porting of the property during a 14 and one-half month amnesty period.

*Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 542 P.2d 278 (1975), which addressed a similar issue, is instructive. In *Topeka Cemetery,* the court examined a statutory tax exemption which divided cemetery property into two groups. Under the provision, cemetery property which was owned by private individuals was declared exempt from ad valorem taxation. However, cemetery property owned by a cemetery corporation was not exempted and was required to pay assessed ad valorem taxes. The issue before the court was whether the statutory exemption violated the equal and uniform taxation provision of the Kansas Constitution.

In *Topeka Cemetery,* the court discussed at some length the constitutional and statutory bases for the exemption of certain classes of property from taxation. In doing so the court stated:

"It is obvious that statutory exemptions based upon *public* ownership of property may have a rational basis and that a public purpose may be served thereby.

"Throughout our judicial history a different test has been applied in situations where public property is not involved and where the statutory tax exemption pertains to property owned by private individuals or corporations. We have consistently held that where public property is not involved, a tax exemption must be based upon the use of the property and not on the basis of ownership alone. The reason for the rule is that a classification of private property for tax purposes based solely upon owners unlawfully discriminates against one citizen in favor of another and therefore is a denial of equal protection of the law. . . . In 1887 it was held in *M. & M. Rly. Co. v. Champlin, Treas.,* 37 Kan. 682, 16 Pac. 222, that a distinction made in the taxation of property in a township belonging to residents and nonresidents was unconstitutional and void and in violation of Article 11, Section 1, of the Kansas Constitution.

"The terms 'equality' and 'uniformity' were explained in *Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977, where the court stated as follows:

" '. . . The essentials are that each man in city, county, and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, and this equality consists in each one contributing in proportion to the amount of his property. To this end all property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax. The imposition of taxes upon selected classes of property to the exclusion

of others, and the exemption of selected classes to the exclusion of others, constitute invidious discrimination which destroy uniformity. . . .' (p. 58.)
In *Voran v. Wright,* 129 Kan. 1, 281 Pac. 938, opinion on rehearing 129 Kan. 601, 284 Pac. 807, it is declared that the classification permitted by Section 1, of Article 11, of the Kansas Constitution applies to property and not to owners thereof. At page 606 of the opinion on rehearing it is stated:
" '. . . A classification as to owners is not now permissible. The only classification authorized or tolerated by this constitutional provision is that of property, and it makes no difference by whom it may be owned, whether by individual, merchant, manufacturer, banking institution or other corporation. . . .' " 218 Kan. at 42-43.

In concluding that the exemption for privately owned cemetery property was unconstitutional, the court reasoned:

"When we turn to the undisputed facts and the statute under consideration in this case and apply the principles of law discussed above, we are compelled to conclude that the statutory classification contained in K.S.A. 79-201 *Second* (Weeks 1969) is discriminatory and unconstitutional as a violation of Article 11, Section 1, of the Kansas Constitution. All lots and tracts of land contained within the boundaries of a cemetery platted by a cemetery corporation are dedicated exclusively for burial purposes and cannot be used for any other purpose. [Citations omitted.] *Since all lands in the cemetery are dedicated exclusively for burial purposes, we find no rational basis for treating differently land owned by individuals and that owned by the corporation, except ownership, which is not a permissible basis for classification.*" (Emphasis added.) 218 Kan. at 44-45.

The Attorney General argues that under the wording of § 14, it is clear that the statutory exemption is not based upon the property or the use thereof, but instead, it is based upon a characteristic or status of the taxpayer. In doing so, reliance is placed upon Attorney General opinion No. 94-79, wherein it was stated:

"While article 11, section 1 of the Kansas constitution has been amended since [*Tomasic*] was decided, there still exists a requirement for uniform and equal treatment of all property subject to taxation except as specifically otherwise provided in the constitution. The constitution does not specifically provide for the classification here in question (personal property discovered, between January 1, 1994 and March 15, 1995, to have escaped taxation for years before 1992). Nor do any of the constitutional exemptions apply to this classification of property. Thus, as in *State ex rel. Tomasic,* we turn to the test for statutory exemptions. It is the fourth prong of the test with which we are concerned. Section 14 of the bill exempts any tangible personal property that is discovered, within a certain period of time, to have escaped taxation for any year prior to 1992 if no taxes have yet been paid. The exemption is not based on the type

of property (other than it is limited to tangible personal property), it is not based on the character of the taxpayer (other than that they did not list and/or pay their tangible personal property taxes within the statutory time line), and it is not based on the use to which the property is put. The only basis for the exemption is the fact that the tax was not paid as required by statute at the time the tax obligation accrued and became due . . . by releasing from property taxation certain discovered escaped personal property upon which taxes have become delinquent, but not granting a similar benefit for those who timely paid their personal property taxes, section 14 of 1994 senate bill No. 542 violates the uniform and equal provisions of article 11, section 1 of the Kansas Constitution."

In dismissing the Attorney General's arguments, the Secretary maintains that § 14 works as a valid modification of the applicable statute of limitations. Subsection (c) of K.S.A. 1994 Supp. 79-1427a provides:

"The provisions of this section shall apply to any tangible personal property discovered during the calendar years 1982, 1983, 1984 and any year thereafter to have escaped appraisal and taxation during any such year or any year within four years next preceding any such year."

The Secretary argues that § 14 modifies the current four-year limitation period to a two- or three-year period, depending upon the date of discovery. She maintains that because § 14 extinguishes the State's right to collect tangible personal property taxes owing prior to 1992, § 14 is a statute of limitations and not a statutory tax exemption.

This court on numerous occasions has set forth various rules regarding statutes of limitation. We note the following: "A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural." *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992). "It is settled in this jurisdiction that it is within the power of the legislature to amend a statute of limitations, either by shortening or extending the time in which an existing cause of action may be barred." *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 307, 303 P.2d 197 (1956). "Statutes of limitation are usually considered to be remedial rather than substantive, in that the remedy only and not the right or obligation is barred." *Rochester American Ins. Co. v. Cassill Truck Lines*, 195 Kan. 51, 55, 402 P.2d 782 (1965). "Statutes of limitation man-

ifest the state's legitimate interest in preventing stale claims." *Church Mut. Ins. Co. v. Rison,* 16 Kan. App. 2d 315, 318, 823 P.2d 209 (1991).

As pointed out by the Attorney General, § 14 does not readily fall into the general understanding or definition of a statute of limitations. The statute provides "such property shall not be liable for any taxes that would have been levied against such property for any year prior to the 1992 tax year and no penalty shall be added." Section 14 does not just limit the remedy of the county but eliminates the "liability for any taxes." It eliminates the actual obligation of the taxpayer and the right of the county. Ordinarily, a statute of limitations creates an affirmative defense and, if not pled and asserted as a defense, the obligation may still be subject to judgment and collection. K.S.A. 60-208(c). To the contrary, § 14 provides a complete release of the escaped property from the tax that otherwise would be owed and collectible.

All parties refer, at one point or another, to § 14 as creating an amnesty from the taxes which would otherwise be collectible. However, such amnesty applies only to property owners who have failed, for whatever reason, to list property for taxation or who have underreported such property. The property owner who makes an honest and diligent effort to list and report taxable property but does not have the financial ability to pay the tax is excluded from the amnesty provisions of § 14.

It also appears that a literal reading of § 14 provides that even those whose property escaped taxation due to the fraud of the taxpayer are relieved of the tax liability but must pay the penalty. The assessment of a penalty based upon the amount of tax for failure to properly return property for taxation when there is no tax liability is difficult to fathom and makes little sense. If § 14 was a true statute of limitations fraud would ordinarily toll the running of the statute, and both the tax and penalty would be subject to collection.

In attempting to interpret § 14 we have searched for any legislative history attending passage of the bill. We found none. In arguing against the Attorney General's position that § 14 creates an unconstitutional tax exemption, respondents assert: "There is

no evidence that the legislature intended to enact an exemption." Likewise, there is absolutely no evidence the legislature intended to enact a "temporary" statute of limitations.

In an attempt to overcome the total lack of any legislative intent surrounding the preparation and passage of § 14, *amicus* Leavenworth Taxpayers attach to their brief an affidavit of a member of the 1994 House of Representatives. The use of such an affidavit to establish legislative intent is questionable at best. See *Hand v. State Farm Mut. Auto. Ins. Co.*, 2 Kan. App. 2d 253, 257, 577 P.2d 1202 (1978). Even if we consider the affidavit, it merely forms the basis for the arguments of *amicus* that § 14 creates a "window of opportunity" for taxpayers "to bring themselves into compliance" with the taxation statutes, free of any obligation to pay the taxes that would otherwise be owed.

Both sides in this case assert that § 14 is clear on its face, but the parties, ironically, divine completely different meanings in this clarity. The Attorney General argues that § 14 is an invalid property tax exemption, while the Secretary maintains that § 14 works as a valid modification of the applicable statute of limitations. Obviously the statute is not as clear as the parties would have us believe. If § 14 is a tax exemption, it works as a retroactive one based not upon the property or use thereof, but instead upon the characteristic of the taxpayer—namely the taxpayer's failure to pay taxes on time. On the other hand, if § 14 is a modification of the limitations period, it is a narrow one in that it only applies to escaped property, subsequently discovered, and the resulting taxes assessed and owing prior to 1992. Additionally, the new legislation does not modify the language of K.S.A. 1994 Supp. 79-1427a(c), the applicable limitation statute, but instead works as a limited tax amnesty window for those who owe taxes prior to 1992. Any taxes assessed and owing after 1992 will continue to fall under the four-year limitation period. As such, instead of acting as either a tax exemption or a statute of limitations, § 14 acts merely as an immunity provision provided for certain delinquent taxpayers. Whether such a provision is constitutional under the facts of this case is the issue we must resolve.

As the precise issue before us is one of first impression in Kansas, we turn to other jurisdictions for guidance.

*State ex rel. v. Hunt,* 132 Ohio St. 568, 9 N.E.2d 676 (1937), which addressed a very similar if not identical issue, is instructive. In *Hunt,* the Ohio Supreme Court reviewed the constitutionality of a 1931 legislative act which in part granted authority to the state tax commission to issue certificates of immunity from collection of back taxes for the years 1926 to 1930. Taxpayer eligibility for the certificate was contingent upon whether the taxpayer had filed a complete return in 1932, listing all taxable intangible personal property for that year. The specific provision under attack was passed in conjunction with a recently adopted constitutional amendment granting the legislature authority to classify personal property for the purpose of taxation. Supporters of the amendment argued that the provision was lawful in that its purpose was to help facilitate implementation of the classification amendment and "bridge the gap between the operation of the old system and that of the new." 132 Ohio St. at 577-78.

Under the facts of the case, a state taxpayer was challenging the authority of the state tax commission which had issued a certificate of immunity to the executors of a decedent's estate which had properly filed a 1932 tax return. The challenge was based in principle upon the equal protection clause of the state's constitution. Although not based specifically on the taxation provisions of the Ohio Constitution, the rationale of the court merits careful consideration. Section 2 of Article 1 of the Ohio Constitution read, in part: "All political power is inherent in the people. Government is instituted for their equal protection and benefit." The court stated:

"In order to determine whether a law is for the equal protection and benefit of the people it is necessary to ascertain whether it operates equally upon all persons charged with the same obligation. If the result of the operation of the law is such that some persons are obligated to pay taxes on a certain kind of property for certain years while other persons owning the same kind of property during the same years are released from such obligations, it cannot in good conscience be said that such a measure conforms to the equal protection clause of the Constitution. We may also safely assume that Section 2 of Article I requires not only the substance of a tax law in respect to the same kind of property be uniform but also the manner in which the assessments of taxes and the collection thereof are made. . . .

. . . .

"In the instant case we are concerned not with the rate of taxation but with the collection of the personal property tax after it has been placed upon the duplicate. During the five-year period, 1926 to 1930, inclusive, we must assume that taxpayers generally, pursuant to the law upon the statute books, returned their personal property for taxation and paid taxes thereon. Those taxpayers, who met their just obligations, were entitled to have all other persons charged with the same obligations pay their taxes as well. We are inclined to believe that such a procedure was intended by Section 2 of Article I of the Constitution.

. . . .

". . . The question we have here is not whether there was express legislative authority, but rather whether the enactment was in violation of the equal protection clause of the Constitution. . . .

. . . .

". . . In other words, the General Assembly in providing for a certificate of immunity from the collection of taxes said in so many words: If it is shown that the taxpayer makes a return of taxable property for 1932 as per Section 5398, General Code, and in good faith lists therein all the personal taxable property in the year 1932, thereupon such taxpayer may make application to the Tax Commission of Ohio for a certificate of immunity from the collection of omitted taxes for the years 1926 to 1930, inclusive. Is such an arrangement permitted by Section 2 of Article I of the Constitution? Obviously it is not an arrangement for the future but a contrivance to remit obligations of the past. It is clearly retroactive and in violation of Section 28 of Article II of the Constitution. In such a case can it be said that the taxpayer who met his obligations for all five years is on the same footing with the delinquent taxpayer who is not only being forgiven the penalty on the taxes but the entire amount thereof? For it must be remembered that we have here a situation dealing not with penalties alone but with the remission of the entire amount of the tax. 'It is a generally recognized principle of the law of taxation that a statute authorizing the acceptance, directly or indirectly, of a part of the tax in satisfaction of the whole is unconstitutional as a denial of the equal protection of the laws and as a disregard of the equality and uniformity of treatment of all taxpayers, where it may be applied as a favoritism extended to the property owner, or some one acting for him, and not as a permission to the local officers to accept less than the full amount due only because actual test has demonstrated that no more can be obtained.' *Ranger Realty Co. v. Miller*, 102 Fla. 378, 136 So. 546, 547." 132 Ohio St. at 577-81.

In concluding that the equal protection clause had been violated, the court stated:

"While the classification amendment, effective January 1, 1931, gave the General Assembly the authority to classify personal property for the purpose of taxation, it did not give the Legislature the power to classify taxpayers so as to distribute the burdens of taxation unequally. The statute under consideration does attempt to

divide taxpayers into two classes. In one class are placed all those who met their just obligations with reference to personal property taxes from 1926 to 1930, inclusive, and in the other class are placed those who did not. To the latter class it gave a remission and cancellation of all obligations for those years merely by the act of complying with the personal property tax law in 1932. To sanction such legislation enacted in violation of Section 2 of Article 1 of the Constitution would be an injudicious construction of constitutional law. To say that such classification comes within the taxation or equal protection clauses of the Constitution is to misunderstand their true purpose." 132 Ohio St. at 582.

Two later Ohio cases, *Black v. Evatt Tax Commr.*, 138 Ohio St. 52, 32 N.E.2d 843 (1941), and *Ireland v. Evatt Tax Commr.*, 138 Ohio St. 61, 32 N.E.2d 847 (1941), reached an opposite result from *Hunt*. However, the later cases were based upon a difference in the facts from those in *Hunt*. In both *Black* and *Ireland* there were vigorous dissents. In *Black*, Judge Williams stated in his dissent:

"The immunity provision of Section 5398, General Code, divides personal property taxpayers into two classes—those who have been honest and careful enough to make full returns and comply with the laws relating to taxation and those who have not made full returns and have thus dishonestly or heedlessly evaded taxation—and allows retention of taxes of those who have complied with legal requirements while in effect it releases those who have not. When we hold that such an enactment is not class legislation denying the equal protection of the law, we open the door to legislative discrimination against law-abiding taxpayers in favor of taxpayers who fail to make full and complete returns and thereby evade just taxation. Such discrimination is a violation of the guaranty contained in the equal protection clause of the organic law." 132 Ohio St. at 60.

We find the decision and rationale of *Hunt* particularly convincing in view of the following language in *State ex rel. Tomasic v. Kansas City, Kansas Port Authority*, 230 Kan. 404, 426, 636 P.2d 760 (1981):

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution finds its counterpart in Sections 1 and 2 of the Bill of Rights of the Kansas Constitution which declare respectively that 'All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness,' and that 'all free governments . . . are instituted for [the] equal protection and benefit' of the people. These two provisions are given much the same effect as the clauses of the Fourteenth Amendment relating to due process and equal protection of the law. *Henry v. Bauder*, 213 Kan. 751, 752-53, 518 P.2d 362 (1974).

"Where constitutional challenges have been made to tax exemption schemes as violative of Article 11, Section 1, of the Kansas Constitution, this court has consistently held that the uniform and equal rate of assessment and taxation provision is, in principle and effect, substantially identical to the principle of equality embodied in the Equal Protection Clause of the United States Constitution. *Associated Rly. Equipment Owners v. Wilson,* 167 Kan. 608, 617, 208 P.2d 604 (1949); and *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 43, 542 P.2d 278 (1975)."

In the final analysis, keeping in mind the general rules of constitutional construction and the additional guidelines to be considered in tax matters, the determination of the constitutionality of § 14 is one of equal protection and fundamental fairness as required by the Kansas Constitution. Section 14 is an unreasonable grant of a tax amnesty or "window of opportunity" based solely on a characteristic or status of the taxpayer rather than upon appropriate classification of the property. Taxpayers are divided into two classes, those who honestly reported their property for taxation and those who, for whatever reason, did not report their property for taxation or underreported the property if returned. The latter group are granted freedom from taxation and statutory penalties, while the former group is not. Such discrimination, when judged against the taxation guidelines, is arbitrary and lacks the rational basis necessary to be constitutional.

We conclude 1994 S.B. 542 § 14, now codified at K.S.A. 1994 Supp. 79-1427c, violates Article 11, § 1 of the Kansas Constitution and is unconstitutional. Mandamus is granted in accordance with the peremptory writ issued earlier.

We further conclude, pursuant to K.S.A. 79-1484, that § 14 is separate and independent from the remainder of 1994 S.B. 542 and, accordingly, sever § 14 from the remainder of the bill. See *Thompson v. KFB Ins. Co.,* 252 Kan. 1010, 1023-24, 850 P.2d 773 (1993).

Mandamus granted.

ABBOTT, J., not participating.

DAVID PRAGER, C.J., Retired, assigned.